Daniel L. DONLAN et al., Plaintiffs,

v.

Thomas CARVEL et al., Defendants.

Civ. A. No. 11694.

United States District Court
D. Maryland.

Sept. 10, 1962.

See also 193 F.Supp. 246.

Lawrence I. Weisman, Baltimore, Md., and Arnold Fleischmann, Towson, Md., for plaintiffs.

Amen, Weisman & Butler, New York City, for Carvel defendants.

David Gerber, Baltimore, Md., for Maryland Baking Co. and Maryland Cup Co.

William L. Marbury, John Martin Jones, Jr., Piper & Marbury and Irving F. Cohn, Baltimore, Md., for Maryland Cup Co. and Eagle Cone Corp.

WINTER, District Judge.

Certain of defendants have moved, under Rule 12(b), F.R.Civ.P., 28 U.S.C.A., to dismiss the six antitrust counts of plaintiffs' twenty count complaint, contending that they fail in a number of respects to state a claim upon which relief can be granted.

The complaint was filed by a number of plaintiffs, each of whom alleged that he became a "Carvel" franchised dealer engaged in the sale at retail of Carvel "soft" ice cream. The persons designated as Carvel defendants[1] issued the franchises, sold and leased the basic equipment for operation of the stores, and performed other related functions. The other defendants (sometimes called "non-Carvel defendants") are the suppliers of various products, such as ice cream mix, cones and paper goods, used in connection with the retail sale of soft ice cream. In the six antitrust counts, plaintiffs generally allege understandings and agreements, combinations, conspiracies through boycott, tie-in sales, exclusive dealing arrangements, price-fixing schemes, and attempts to monopolize in violation of the Sherman and Clayton Acts, without, however specifying what provisions of those Acts are claimed to have been violated.

The motions to dismiss are filed on behalf of all of the Carvel defendants, Maryland Baking Company, a supplier of ice cream cakes, cones, cups and allied bakery products, Maryland Cup Company, a supplier of paper containers, and Eagle Cone Corporation, a supplier of ice cream cakes, cones, cups and allied bakery products.

In regard to the counts in question the four grounds of the motion are: (1) the complaint fails to allege Federal jurisdiction, because it fails to allege restraints which involve, directly affect or substantially restrain or obstruct interstate commerce; (2) the complaint fails to allege public injury as to those allegedly illegal restraints which do not constitute *per se* antitrust violations; (3) the complaint fails to allege any injury to plaintiffs in regard to the price-fixing allegations, because the complaint alleges that increases in prices caused by the allegedly illegal restraints were passed on to the consuming public; and (4) the complaint fails to state a cause of action under § 3 of the Clayton Act, 15 U.S.C.A. § 14, because it fails to allege that the Carvel defendants have a dominant or controlling position in any relevant market. Should the Court find these various grounds well-founded, the first would require a complete dismissal of the counts of the complaint to which the motions are directed, and the others would require a partial dismissal.

■■ The arguments and briefs cover a wide range, particularly those advanced on behalf of the Carvel defendants. The latter are more in the nature of arguments on a motion for summary judgment, but the matter is before the Court on motion to dismiss and the oft repeated cardinal rule that the sufficiency of the complaint is to be tested by the allegations contained therein is fully applicable. In this connection, it should be noted that most of the defendants were also defendants in a similar suit filed in and partially heard by the United States District Court for the Southern District of New York, Susser et al. v. Carvel Corporation et al., 206 F.Supp. 636 (D.C.S.D.N.Y., Decided June 7, 1962). On antitrust liability, that case has been decided adversely to most of the contentions of the plaintiffs there, but, *after trial*, so that much of what has been said by that Court is inapplicable

1. Thomas Carvel, a resident of New York; Carvel Stores of New York, Inc.; Carvel Corporation; Chain Locations of America, Inc.; Carvel Stores Realty Corporation; and Carvel Dari-Freeze Stores, Inc. (all New York corporations).

here. It should be noted also that summary dismissal in private antitrust litigation should be sparingly granted, because of the nature of the issues and the availability of proof, Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962); McElhenney Co. v. Western Auto Supply Company, 269 F.2d 332, 339 (4 Cir. 1959).

## A—Federal Jurisdiction:

ˑPlaintiffs allege that all defendants "are engaged in interstate commerce within the scope of the antitrust laws of the United States" (¶ 63, Complaint), that "the actions of the defendants complained of herein affected a substantial portion of interstate commerce" (¶ 64, Complaint), and that, after specifying various acts of the defendants alleged to be illegal, "trade and commerce between the States has been and is being hampered, obstructed and restrained; competition has been and is being hampered, obstructed, restrained and foreclosed" (¶ 70, Complaint).

In order for the Sherman Act and the Clayton Act to be applicable to an alleged unlawful restraint, it must appear that the restraint occurs *in* interstate commerce, or, if the restraint arises in intrastate commerce, that it has a substantial adverse effect *on* interstate commerce. Radiant Burners v. Peoples Gas Co., 364 U.S. 656, 81 S.Ct. 365, 5 L.Ed.2d 358 (1961); Klor's v. Broadway-Hale Stores, 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959); U. S. v. Women's Sportswear Ass'n., 336 U.S. 460, 69 S.Ct. 714, 93 L.Ed. 805 (1949); Mandeville Farms v. Sugar Co., 334 U.S. 219, 68 S.Ct. 996, 92 L.Ed. 1328 (1948); United States v. Yellow Cab Co., 332 U.S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010 (1947); Las Vegas Merchant Plumbers Ass'n. v. United States, 210 F.2d 732 (9 Cir.1954) cert. den. 348 U.S. 817, 75 S.Ct. 29, 99 L.Ed. 645 (1954).

If the complaint is deemed not to allege sufficiently that the alleged restraints are not in interstate commerce but, rather, are in intrastate commerce, a question of fact arises as to the substantiality of the impact of the local restraint on interstate commerce. This is not a question which should be decided on motion to dismiss. Savon Gas Stations No. 6, Inc. v. Shell Oil Company, 203 F.Supp. 529 (D.C.Md.1962), appeal pending, urged by defendants, is not applicable, because there it was decided on motion for summary judgment that the undisputed facts showed that the impact of the alleged restraint was incidental and inconsequential in its effect on interstate commerce. Here the question arises on allegations, treated as proved for purposes of these motions.

The Court concludes that plaintiffs have sufficiently pleaded Federal jurisdiction.

## B—Public Injury:

 In private antitrust litigation, except for *per se* violations of the Sherman Act, a plaintiff to recover must allege and prove that the public has been adversely affected by the alleged unlawful restraint, Apex Hosiery Co. v. Leader, 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311 (1940); Nelligan v. Ford Motor Company, 262 F.2d 556 (4 Cir.1959) and Schwing Motor Company v. Hudson Sales Corporation, 138 F.Supp. 899 (D. C.Md.1956), aff'd. per curiam 239 F.2d 176 (4 Cir.1956) cert. den. 355 U.S. 823, 78 S.Ct. 30, 2 L.Ed.2d 38 (1957). The necessity of this allegation and proof in the case of *per se* violations is excused, because as to this type of restraint it has been held that Congress had determined its own criteria of public harm and it was not for the courts to decide whether in an individual case injury had actually occurred, Klor's v. Broadway-Hale Stores, supra. What are the *per se* violations is not always entirely clear. Northern Pacific R. Co. v. United States, 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958) lists group boycotts, division of markets, price-fixing and tie-in arrangements as those restraints which are declared to be *per se* illegal under the Sher-

man Act. Klor's v. Broadway-Hale Stores, supra, held that a group boycott is *per se* illegal, but it has been suggested by Rahl, Per Se Rules and Boycotts under the Sherman Act: Some Reflections On the Klor's Case, 45 Va.L.Rev. 1165 (1959) that in some cases a boycott may not be *per se* illegal under the Sherman Act. Cf. Handler, Recent Antitrust Developments, 14 The Record (Assoc. of the Bar of the City of N. Y.) 318, 343, et seq. (1959).

Defendants admit that as to the *per se* violations which have been alleged plaintiffs need not allege or prove public injury, but in effect argue that as a minimum plaintiffs must allege and prove public injury in regard to the allegations of an exclusive dealing arrangement and an attempt to monopolize.

A precise delineation of what are and what are not *per se* violations is unnecessary in this case, because plaintiffs have alleged that "there was and is a vast market and demand particularly within the trading area of the non-Carvel defendants and within the State of Maryland, for the products of each of the defendants" (¶ 64, Complaint), that "* * * a large and substantial segment of the public, particularly in the areas aforementioned [,] by the aforesaid agreements and understandings was compelled to and did pay higher prices for the products manufactured and sold by the defendants and that said public was deprived of the right to purchase said products in a free, open and competitive market. Furthermore, the public in said areas was deprived of the opportunity of buying competitive food products from Carvel franchised dealers, including the plaintiffs herein" (¶ 68, Complaint), and that "resale prices of merchandise sold by franchised Carvel operators have been and are being unlawfully and improperly fixed and maintained and the purchasing public compelled to pay higher prices for such merchandise; and the public has been and is being otherwise injured and prejudiced in the premises" (¶ 70, Complaint).

Manifestly, plaintiffs have alleged public injury with regard to each of the alleged restraints, and defendants' contention to the contrary is without merit.

C—Private Injury:

Defendants next rely upon the provisions of § 4 of the Clayton Act, 15 U.S.C.A. § 15, which authorizes private antitrust litigation by "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws * * *." The argument is advanced that, since plaintiffs have alleged that defendants' alleged unlawful price-fixing has resulted in higher prices to the public, it follows that plaintiffs visited defendants' alleged wrongdoing on the public and suffered no private injury. That plaintiffs must show that they have been injured is required expressly by § 4 of the Clayton Act and the holdings in Radiant Burners v. Peoples Gas Co., supra; American Potato Dryers v. Peters, 184 F.2d 165 (4 Cir.1950), cert. den. 340 U.S. 930, 71 S. Ct. 491, 95 L.Ed. 671 (1951); Glenn Coal Co. v. Dickinson Fuel Co., 72 F.2d 885 (4 Cir.1934).

Defendants' contention is without merit because plaintiffs, after having first alleged that the non-Carvel defendants refused to sell to them at competitive prices, and that plaintiffs were required to make purchases from the non-Carvel defendants at prices and upon terms fixed by all defendants, that competitors of the non-Carvel defendants were threatened with litigation and damage claims if they attempted to make sales to plaintiffs, and that plaintiffs were required to purchase equipment for making soft ice cream at prices substantially in excess of competitive prices (¶ 65, Complaint), next allege that as a direct and proximate consequence of defendants' conduct "* * * Carvel franchised dealers, including the plaintiffs, were forced to buy the products of the defendants at higher prices than said products could have been obtained elsewhere, were deprived of the opportunity to sell competitive products from their retail establishments and

were thereby prevented from making a profit and eventually were forced to discontinue business from their said retail establishment" (¶ 69, Complaint).

D—Dominant or Controlling Position as an Element of Violation of § 3 of the Clayton Act:

Plaintiffs have alleged that defendants violated the antitrust laws in that (a) they were required to purchase the products, supplies and equipment of the non-Carvel defendants from and through the Carvel defendants at the price and upon the terms fixed by all of the defendants and (b) they were prohibited from selling food products competitive with those of the Carvel defendants (¶ 65, Complaint). These allegations must be read in connection with the general allegation that the Carvel defendants deal in "soft ice cream, ice cream products and/or ice cream making equipment and/or buildings and/or real estate and/or franchises and/or design patents and/or paper products and/or bakery products and/or ice cream ingredients and mixes and/or other related products used in the manufacture, sale and distribution of soft ice cream" (¶ 18, Complaint), and the allegation that certain vital portions of the ice cream freezers remained the property of the Carvel defendants and must be returned to them upon termination of the franchise (¶ 32, Complaint). Plaintiffs allege generally a violation of the antitrust laws, but they fail to allege whether the alleged tying sales and exclusive dealing arrangements are illegal under §§ 1 and 2 of the Sherman Act, 15 U.S.C.A. §§ 1, 2 or under § 3 of the Clayton Act.

Defendants make no argument as to §§ 1 and 2 of the Sherman Act, but they do argue that tying and exclusive dealing agreements illegal under § 3 of the Clayton Act are insufficiently pleaded, in that plaintiffs have failed to allege that the effect of the agreements may substantially lessen competition or tend to create a monopoly in any line of commerce. The principal thrust of the argument is not that there were not tying or exclusive dealing agreements, or not that the other requirements of § 3 of the Clayton Act have not been met, but that these agreements do not have the effect on interstate commerce or competition which would make them illegal.

■ Although a tying agreement may constitute a violation of §§ 1 and 2 of the Sherman Act, Times-Picayune Pub. Co. v. United States, 345 U.S. 594, 73 S.Ct. 872, 97 L.Ed. 1277 (1953); International Salt Co. v. United States, 332 U.S. 392, 68 S.Ct. 12, 92 L.Ed. 20 (1947); Osborn v. Sinclair Refining Company, 286 F.2d 832 (4 Cir.1961), cert. den. 366 U.S. 963, 81 S.Ct. 1924, 6 L.Ed.2d 1255 (1961), it is stated in the Times-Picayune case that if the other requirements of § 3 are met (345 U.S. pp. 608–609, 73 S.Ct. p. 880):

> " * * * from the 'tying' cases a perceptible pattern of illegality emerges: When the seller enjoys a monopolistic position in the market for the 'tying' product, *or* if a substantial volume of commerce in the 'tied' product is restrained, a tying arrangement violates the narrower standards expressed in § 3 of the Clayton Act because from either factor the requisite potential lessening of competition is inferred. And because for even a lawful monopolist it is 'unreasonable, *per se*, to foreclose competitors from any substantial market,' a tying arrangement is banned by § 1 of the Sherman Act whenever *both* conditions are met."

In regard to § 1 of the Sherman Act, it is significant that Northern Pac. R. Co. v. United States, supra, has converted the requirement that the seller enjoys a monopolistic position in the market for the tying product into the test that the party selling the tying product has (356 U.S. p. 6, 78 S.Ct. p. 518) "sufficient economic power with respect to the tying product to appreciably restrain free competition in the market for the tied product and a 'not insubstantial' amount of

interstate commerce is affected," Handler, Some Unresolved Problems of Antitrust, 62 Col.L.Rev. 930, 948 (1962). If the above quoted portion of Times-Picayune is read in the light of this later adjudication it may well be that § 3 of the Clayton Act is transgressed, assuming the other requirements of § 3 are met, if the party selling the tying product has sufficient economic power with respect to the tying product to appreciably restrain free competition in the market for the tying product but not enough economic power to enjoy a monopolistic position. It is unnecessary, however, to decide this question here because, as will be hereafter shown, the allegations of the complaint are sufficient to show that a substantial volume of commerce in the tied products is restrained. See: Turner, The Validity of Tying Arrangements Under the Antitrust Laws, 72 Har.L.Rev. 50 (1958).

Similarly, while an exclusive dealing agreement may violate § 1 of the Sherman Act, cf. United States v. Columbia Steel Co., 334 U.S. 495, 68 S.Ct. 1107, 92 L.Ed. 1533 (1948), exclusive dealing arrangements are generally attacked under § 3 of the Clayton Act. Although the chances of judicial validation of an exclusive dealing arrangement are greater than those of tying arrangements, an exclusive dealing arrangement becomes illegal, assuming the other requirements of § 3 are met, if the effect of the agreement is to foreclose competition in a substantial share of the line of commerce affected, Tampa Electric Co. v. Nashville Coal Co., 365 U.S. 320, 81 S.Ct. 623, 5 L.Ed.2d 580 (1961); Standard Oil Co. of California and Standard Stations v. United States, 337 U.S. 293, 69 S.Ct. 1051, 93 L.Ed. 1371 (1949); Handler, supra, pp. 948–949.

Applying the test of the requisite effect of a tying agreement to render it illegal under § 3 of the Clayton Act, the Court concludes that plaintiffs' allegations are sufficient where they are questioned on a motion to dismiss. Plaintiffs have alleged that "there was and is a vast market and demand particularly within the trading area of the non-Carvel defendants and within the State of Maryland, for the products of each of the defendants. The actions of the defendants complained of herein affected a substantial portion of interstate commerce" (¶ 64, Complaint), that plaintiffs were required to buy the products of the non-Carvel defendants from and through the Carvel defendants and not from or through others, and the various documents and agreements, including franchises and leases between the Carvel defendants and plaintiffs enabled the Carvel defendants to carry out additional restraints of trade not set forth in the agreements and documents (¶ 65, Complaint), and that as a direct and proximate result and consequence of the acts, practices and conduct of Carvel defendants "competition has been and is being hampered, obstructed, restrained, and foreclosed" (¶ 70, Complaint). It may well be that prior to trial the issues and contentions of plaintiffs must be more specifically defined, but for purposes of the motions the allegations are sufficient to show that a substantial volume of commerce in the tied product is restrained.

In regard to exclusive dealing arrangements, plaintiffs have alleged that the defendants entered into exclusive dealing arrangements that prohibited plaintiffs from selling competitive food products, and which required plaintiffs to purchase all equipment for making soft ice cream from the Carvel defendants (¶ 65, Complaint), that the public was deprived of the opportunity to buy competitive food products from plaintiffs (¶ 68, Complaint), and that the plaintiffs were forced to buy the products of the defendants (¶ 69, Complaint). It is further alleged that these acts, practices and conduct of the Carvel defendants have hampered, obstructed and restrained interstate commerce, and hampered, restricted, restrained and foreclosed competition (¶ 70, Complaint).

Again, a sharper delineation of the issues before trial would seem to be indicated, but on motion to dismiss, the al-

legations sufficiently allege that a substantial volume of commerce in the tied products is restrained.

In the light of the foregoing, defendants' motions to dismiss are denied.