Steve MARSTON, Barry Rubin, Jonathan Moselle, Helen Cooper, Dres Bogema, Dan Swerdling, Kurt Wieneke, and Laura Magzis, individually and on behalf of all others similarly situated, Plaintiffs,

v.

ANN ARBOR PROPERTY MANAGERS (MANAGEMENT) ASS'N et al., Defendants.

Civ. No. 32499.

United States District Court E. D. Michigan, S. D.

July 25, 1969.

Virginia Davis Nordin, Ann Arbor, Mich., for plaintiffs.

Peter A. Davis (argued the cause for all defendants), Clark, Klein, Winter, Parsons & Prewitt, Detroit, Mich., for Summit Associates.

Joseph C. Hooper and John R. Hathaway, Hooper, Hathaway & Fichera, Ann Arbor, Mich., for Wilson White Co.

William D. Barense, Dobson, Griffin & Barense, Ann Arbor, Mich., for John C. Stegeman, J. L. Shipman and Charter Realty.

Robert E. Meader, Conlin, McKenney, Wood & Meader, Ann Arbor, Mich., for J. Patrick Pulte and J. Patrick Pulte, Inc.

John W. Conlin, Jr., Conlin, Conlin, McKenney, Wood & Meader, Ann Arbor, Mich., in pro. per.

Jack Becker and Louis C. Andrews, Ann Arbor, Mich., for Ann Arbor Trust Co.

Kent P. Talcott, Ellis & Talcott, Ann Arbor, Mich., for Apartments Limited, Inc.

Norman D. Katz, Katz & Victor, Detroit, Mich., for Campus Management, Inc.

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COMPLAINT

KAESS, District Judge.

This is an alleged class action seeking preliminary and permanent injunctions to restrain defendants both from conspiring to fix the price level of rental apartments in Ann Arbor, Michigan, and from attempting to control the supply of new apartment units in the market, and also seeking treble damages for the economic injury sustained by the class of tenants who have lived in these apartments for the past four years. Jurisdiction of this court is invoked under the provisions of Section 4 of the Clayton Act, 38 Stat. 731, as amended (15 U.S.C. § 15) to recover damages

which plaintiffs have allegedly sustained due to the alleged violations of Section 1 of the Sherman Act by the defendants.

Defendant Ann Arbor Property Managers Association is an unincorporated trade association. It has no fixed or maximum membership, but normally is composed of eight to ten individuals, partnerships and corporations who, it is claimed, control a major portion of the Ann Arbor housing market, and who own and manage property which is rented to members of the complaining class. Plaintiffs allege further that defendant association and its co-defendants control and manage a major portion of the housing in the central campus area, and that they provide a particular type of housing, i. e., furnished rental units, which are especially desirable for undergraduate and unmarried students attending the University of Michigan.

It is plaintiffs' contention that the defendants have agreed, combined, and conspired with regard to the prices, duration and terms at which apartments will be offered for rent to University students; that this alleged agreement has affected rental prices in this area. Plaintiffs further allege that the purpose and effect of the combination and agreement is to avoid competition in the market and to secure to defendants profits and rates of return which are unreasonably above those which could be obtained under free competition. Further, that the agreement was intended by defendants to have the effect of restraining trade and free competition in the market, in violation of § 1 of the Sherman Act, 15 U.S.C. § 1. In addition, plaintiffs claim that defendants have agreed, combined, and conspired to exclude potential competitors from the market by systematically embracing each new land acquisition opportunity. Further, that defendants select one of their number to enter a bid sufficiently above the estimated fair market price for each acquisition opportunity to insure that defendant's status as the highest bidder and purchaser. That the exclusion of potential apart-

ment developers from the market has allowed defendants to restrict the supply of new apartments, and to maintain the high rental prices in restraint of trade, contrary to free competition, in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

In response to plaintiffs' complaint, defendants have filed a motion to dismiss on alternative grounds and a counterclaim. Defendants' motion to dismiss alleges that (a) plaintiffs have failed to state a claim upon which relief can be granted; (b) the court lacks jurisdiction of the subject matter of the action, because it appears on the face of the complaint that there is no "restraint of trade or commerce and among the several states," as required by Section 1 of the Sherman Act, and, therefore, plaintiffs were not and are not being injured by reason of anything forbidden in the antitrust laws, as required by Section 4 of the Clayton Act; (c) this action is not maintainable as a class action because plaintiffs' suit is a sham and is a fraud upon the court; (d) that there are no relevant questions of law or fact common to the class. Defendants' counterclaim alleges that plaintiffs agreed and conspired to form and/or join an organization, the Tenants Union, whose purpose is to engage in a mass and concerted withholding of rent from defendants in violation of the contracts between them; that plaintiffs have breached their respective lease agreements with defendants by withholding rental payments justly due; that they have induced others to breach their respective contracts; that they are presently interfering with defendants' property and contract rights; that they are libeling and slandering defendants; subjecting defendants to biased and unfair publicity, and are attempting to otherwise destroy defendants' business, property, reputation, good will and prestige. Wherefore, defendants pray that the court permanently enjoin and restrain plaintiffs from engaging in any of the acts complained of herein, under penalty of contempt of court. That the "Ten-

ants Union" be adjudged and decreed an unlawful organization and be ordered dissolved and permanently disbanded. That plaintiffs be ordered to return, or cause to be returned and paid to the persons lawfully entitled thereto, rental funds in the Bank of Montreal, Windsor, Canada.

Defendants have likewise filed a motion to dismiss the complaint against codefendant J. Patrick Pulte and J. Patrick Pulte, Inc., a Michigan corporation, and John W. Conlin, Jr., an attorney. In regard to Pulte and Conlin, defendants allege that the activities of both codefendants is not a part of interstate commerce and not subject to the federal antitrust laws.

In order for the court to acquire jurisdiction over this matter, it must be clearly established that the provisions set forth in Section 4 of the Clayton Act (15 U.S.C. § 15) and Section 1 of the Sherman Act (15 U.S.C. § 1) are met. Section 4 of the Clayton Act sets forth the venue and jurisdictional requirements. The question is, whether the requirements of the provisions found therein have been met.

■■ This court concludes that the provisions found within Section 1 of the Sherman Act have not been met and is fatal to plaintiffs' case. Section 1 of the Sherman Act provides that "every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal * * *." Unless interstate or foreign commerce has been directly and unreasonably restrained, there can be no violation of the Sherman Act and no private cause of action under the Clayton Act. The court is aware that a business of which the ultimate object is the operation of intrastate activities, such as local apartment construction and rental, may make such a utilization of the channels of interstate trade and commerce that the business itself assumes some minor interstate character. However, the court does not find defendants conducting such a business. Defendants' business is not of such an interstate character as intended by the Act.

It is clear from the complaint that the restraints alleged relate only to the rental of real estate in the Ann Arbor area. This is local commerce and the competition allegedly restrained and interfered with is local in nature. There is no evidence that defendants' business has, or will have, a substantial adverse effect on interstate commerce. Donlan v. Carvel (D.C.Md., 1962), 209 F.Supp. 829, at 831; Bratcher v. Akron Area Board of Realtors (C.A.6th, 1967), 381 F.2d 723, at 724; Las Vegas Merchant Plumbers Ass'n v. United States (C.A. 9th, 1954), 210 F.2d 732, at 739.

■ The court realizes that defendants may ultimately receive material from interstate shipment, and that such materials are used in the construction of their apartment buildings. This alone, however, does not substantially affect interstate commerce. It has frequently been held that the incidental flow of supplies in interstate commerce does not in itself suffice to transform an essentially intrastate activity into an interstate enterprise. Lieberthal v. North Country Lanes, Inc. (C.A.2d, 1964), 332 F.2d 269, at 271; see page 271 for additional authority.

The commodity or articles alleged to constitute interstate commerce are students attending the University of Michigan. Plaintiffs contend that defendants' actions are inhibiting their right to attend the University. That, as a result thereof, the flow of outstate students will gradually decrease because of the excessive rental rates. That plaintiffs constitute interstate commerce because they contribute financially to the support of the University. That the University is an educational institution having for its business the educating of those who attend.

■ The complexity of modern business leaves little room for contracts, or business transactions, which cannot be said in some degree to affect interstate

**1280**

commerce. Cotillion Club, Inc. et al. v. Detroit Real Estate Board, et al (D. C.Mich.1964), p. 8, unrecorded, Hon. Stephen J. Roth, January 24, 1964. However, in the case at bar, the court is unable to classify or look upon plaintiffs as being a part of interstate commerce. The fact that an individual attends a University in a state other than his own and is regarded as being part of interstate commerce is beyond the comprehension of this court. It is this court's view there is presently no way that plaintiffs, as individuals or students, may come within the definition of "interstate commerce".

■ The actions of defendants are purely local in nature, restricted to the Ann Arbor area. Any effect their actions would have on interstate commerce is remote and inconsequential. There is no evidence of an intent to restrain interstate commerce, or a substantial and actual restraint of interstate commerce. Any conspiracy which only indirectly or incidentally affects and restrains interstate commerce is not within the purview of Section 1 of the Sherman Act. Cotillion Club, et al. v. Detroit Real Estate Board, et al., supra, at 8.

If the court were to assume that defendants' actions, indirect and remote as they may be to interstate commerce, were to affect interstate commerce, it would follow that all such acts, remote to the main stream of interstate commerce, are subject to the federal antitrust laws, no matter how local may be their operations. What then remains of state antitrust enforcement? The State of Michigan specifically provides regulations for and safeguards against "Restraint of Trade" through its own and adequate laws. Sections 28.31 through 28.79(10) of Michigan Statutes Annotated set forth the pertinent provisions.

The "Restraint of Trade", if any, is strictly a local problem. Plaintiffs should seek their remedy under state law. The court would not hesitate to entertain plaintiffs' action if Section 1 of the Sherman Act had been violated, but it has not. Plaintiffs have failed to satisfy the interstate commerce requirement. They have been unable to satisfactorily demonstrate that defendants' activities have occurred within the "flow" of interstate commerce, or that such activities have had a direct and adverse effect on interstate commerce.

In response to the other motions filed by the respective parties, the court finds that it is not necessary to consider them as it does not have jurisdiction over this matter. Therefore, for the foregoing reasons, the court must dismiss plaintiffs' complaint.

It is hereby ordered that defendants' motion to dismiss plaintiffs' complaint is granted. Such being the case the counterclaims too are dismissed for want of jurisdiction.