330 F.2d 103
 Paul GORDON and Ann Gordon a partnership d/b/a Physicians and Surgeons Information Bureau, Expert Copy Service and Midland Office Service, Plaintiffs-Appellants,
v.
ILLINOIS BELL TELEPHONE COMPANY, a Corporation, W. V. Kahler, Blaine Cummings, J. N. Hunter, A. I. Rivenes, C. N. Calder, J. M. Case and A. W. Schrank, Defendants-Appellees.
 No. 14209.
 United States Court of Appeals Seventh Circuit.
 April 8, 1964.
 
 Edmund Hatfield, Chicago, Ill., for plaintiffs-appellants.
 James E. S. Baker, Kenneth F. Burgess, Chicago, Ill., for defendants-appellees, Frederic F. Brace, Jr., F. Willis Caruso, Richard H. Compere, Sidley, Austin, Burgess & Smith, Chicago, Ill., of counsel.
 Before DUFFY, CASTLE and KILEY, Circuit Judges.
 CASTLE, Circuit Judge.
 
 
 1
 Plaintiffs-appellants, Paul Gordon and Ann Gordon,[1] prosecute this appeal from a judgment entered for defendants-appellees, Illinois Bell Telephone Company and seven of its officers and executives.[2] The District Court directed a verdict for defendants and entered judgment on the directed verdict.
 
 
 2
 Plaintiffs' suit predicates liability in defendants on alleged violations of the Sherman Act and the Federal Communications Act.[3] The complaint, as amended, alleges in substance that defendants' termination of a type of secretarial switchboard service utilized to operate a telephone answering service, and the telephone company's refusal to reinstate such service, was for the purpose of driving plaintiffs out of the telephone answering service business in contravention of the antitrust laws and also constitutes unjust or unreasonable discriminatory treatment of plaintiffs in violation of the Federal Communications Act.
 
 
 3
 The denials in defendants' answer put in issue, among other things, the application of the statutes relied upon by plaintiffs and the alleged reason and purpose for termination of the service involved.
 
 
 4
 The record discloses that plaintiffs are engaged in the telephone answering service business in Chicago, Illinois.[4] In 1955 they moved to a new location in the city but defendants refused to transfer the lines and facilities, or to permit plaintiffs to subscribe to any other business telephone service, until $2,054.96 they owed the telephone company was paid. Plaintiffs then obtained a nominal subscriber to be financially responsible for their telephone bills and the necessary lines and equipment were installed in the latter's name at the plaintiffs' new location. The unsatisfactory payment record which followed in connection with the new installation led the telephone company to request a $500.00 deposit pursuant to the governing tariff provisions. Plaintiffs refused to make the deposit and filed a complaint with the Illinois Commerce Commission which, after hearing the matter, entered an order requiring plaintiffs to make such deposit within seven days as a condition of continued service.
 
 
 5
 In the interim plaintiffs' monthly bills for service had fallen in amount and the telephone company reduced the required deposit to $400.00 and on the request of Paul Gordon agreed that plaintiffs could make the deposit in four monthly installments of $100.00 each. Plaintiffs failed to keep their commitments with respect to the time and amount of the installment payments but Paul Gordon finally prevailed on the defendants to waive the final deposit installment of $100.00 upon plaintiffs' agreement to pay their current telephone bills by the 15th of each month. Although plaintiffs promised to confirm this arrangement by letter they did not do so until the telephone company again demanded remittance of the final $100.00 installment of the $400.00 deposit. When plaintiffs failed to pay the ensuing month's bill until September 17, 1957, the company demanded the balance of the deposit by the 23rd of the month. The $100.00 was not so deposited and plaintiffs' outgoing service was suspended and plaintiffs were advised that if the deposit was not made by 5:00 P.M. on September 27, 1957, all of their telephone service would be terminated.
 
 
 6
 Plaintiff Paul Gordon again contacted various officials of the company in an effort to avoid making the deposit. He met with no success but was referred to defendant A. W. Schrank, the company employee who was handling the matter. In a telephone conversation with Schrank, Gordon was told the deadline was 5:00 P.M., then just minutes away. Schrank refused Gordon's request that Schrank wait in his office for Gordon to arrive but advised Gordon that the deposit if made would be accepted by a company cashier. Sometime after 5:00 P.M. on Friday, September 27, 1957, Gordon went to the company office and handed $100.00 to a company cashier. There is nothing in the record which indicates that Gordon told the cashier the $100.00 was a deposit or that he requested a deposit receipt. The $100.00 was credited against the plaintiffs' telephone bill and Gordon accepted a receipt for payment on the telephone bill. Deposit receipts issued by the company are a special type of receipt, different from the form of receipt given for payments made on telephone bills. Gordon had received such deposit receipts in connection with previous deposits. On Sunday, September 29, 1957, Gordon telephoned defendant A. I. Rivenes, a company executive, at his home in continuation of his efforts to avoid having to make the $100.00 deposit. He did not state that he had made the deposit nor did he mention the $100.00 remittance for which he had been issued a receipt.
 
 
 7
 On Monday, September 30, 1957, the plaintiffs' switchboard service was terminated and its reinstatement was refused but the telephone company did immediately install a different type of answering service facilities,[5] in the use of which the customers of the answering service, rather than the operator of the service, are responsible for paying the telephone bills involved. Plaintiffs have continued to operate a telephone answering service with this equipment but contend that it is not as convenient to operate as the secretarial switchboard service which was terminated.
 
 
 8
 A study of the record convinces us that apart from consideration of whether the testimony and evidence concerning the $100.00 remittance of September 27, 1957, presents a factual issue (whether it was remitted as a deposit or as a payment on plaintiffs' bill for service) which would require resolution by the jury, the failure of the evidence, along with all inferences to be reasonably drawn therefrom, when viewed in the light most favorable to plaintiffs, to support the existence of elements essential to recovery under the statutes relied upon is such that the jury would not have been warranted in returning a verdict for plaintiffs. Although a motion for a directed verdict should be denied where the evidence, along with all inferences to be reasonably drawn therefrom, when viewed in the light most favorable to the party opposing such motion, is such that reasonable men in a fair and impartial exercise of their judgment may reach different conclusions (Smith v. J. C. Penney Company, 7 Cir., 261 F.2d 218, 219) it is, nevertheless, proper to direct a verdict for the defendant where the plaintiff has failed to present proof which would warrant a favorable finding on any issue or issues essential to the cause of action, even though there may be conflicting evidence, or the possibility of conflicting inferences arising from evidence, on other issues which otherwise would have required submission of the case to the jury. Cf. Weir v. Chicago Plastering Institute, 7 Cir., 272 F.2d 883, and Wisconsin Liquor Co. v. Park & Tilford Distillers Corp., 7 Cir., 267 F.2d 928, 930-931, in which this Court upheld directed verdicts in antitrust cases where the evidence did not warrant a finding that a conspiracy existed. The record in the instant case, measured by such principle, reveals that plaintiffs failed to present evidence from which the jury would have been warranted in finding or inferring the existence of elements prerequisite to a recovery by plaintiffs under either the sections of the Sherman Act or the sections of the Federal Communications Act upon which they based their action.
 
 
 9
 In this connection the evidence discloses that plaintiffs' telephone answering service is essentially a local operation and business. That a few of plaintiffs' customers are engaged in interstate commerce is too unrelated a factor to impress plaintiffs' operation with an interstate character within the meaning and ambit of the Sherman Act. Cf. United States v. Yellow Cab Co., 332 U.S. 218, 230-234, 67 S.Ct. 1560, 91 L.Ed. 2010. Moreover, there is nothing in the record to support a conclusion that defendants' acts were pursuant to any agreement, combination or conspiracy between any of the defendants and any third party not employed by the telephone company. It is undisputed that the individual defendants acted only on behalf of the company, the corporate defendant, and not on their own behalf. Thus, there was not proof of the "combination" or "conspiracy" element required under Section 1 of the Sherman Act. Nelson Radio & Supply Co., Inc. v. Motorola, Inc., 5 Cir., 200 F.2d 911. Likewise, there is no support in the record for a conclusion that defendants are in competition with the plaintiffs, or had any motive or intent to monopolize the telephone answering service business or to in any manner restrain interstate commerce, so as to bring their conduct within the proscriptions of Section 2 of the Sherman Act. Defendants' answer denied that its automatic electronic answering and recording service known as "Amanda" was or is in substantial competition with service of the type offered by plaintiffs. No evidence was offered to the contrary. And the record is barren of proof that defendants' acts were directed in restraint of competition or to eliminate plaintiffs from the field rather than simply to protect the telephone company from plaintiffs' repeated financial defaults and to comply with the order of the Illinois Commerce Commission which required plaintiffs to make the deposit or lose their telephone service. The termination of the secretarial switchboard service was immediately followed by installation of another type of service which did not require further reliance upon plaintiffs' demonstrated unsatisfactory credit or that the company continue to tolerate plaintiffs' repeated defaults in timely payment for service.
 
 
 10
 Plaintiffs produced no evidence that defendants' actions were directed to or effected any illegal restraint or any unjust or unreasonable discrimination against the plaintiffs. There is nothing in the record which would support a conclusion that plaintiffs were treated any differently from any other customer with a similar payment and credit record. It is apparent that there is nothing to support plaintiffs' claim that defendants violated Section 13 of the Sherman Act or to support their allegation that defendants violated any of the sections of the Federal Communications Act upon which plaintiffs rely.
 
 
 11
 We are not persuaded by the contentions of the plaintiffs relating to the issues we have discussed and although we have considered the additional and subsidiary arguments they advance in support of their position, and the cases cited and relied upon in connection therewith, we are of the view that none of them merit detailed discussion.
 
 
 12
 We conclude that the District Court applied the proper standards in directing the verdict for the defendants. The items of costs with respect to which plaintiffs complain are permissible items (W. F. & John Barnes Co. v. International Harvester Co., 7 Cir., 145 F.2d 915; United States v. Kolesar, 5 Cir., 313 F.2d 835) and we perceive, on the record before us, no abuse of discretion on the part of the trial court in its allowance and assessment of such costs against the plaintiffs. The allowance and assessment of such costs will not be disturbed on appeal (A.B.C. Packard, Inc. v. General Motors Corp., 9 Cir., 275 F.2d 63).
 
 
 13
 The judgment order of the District Court is affirmed.
 
 
 14
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 A partnership, doing business as Physicians and Surgeons Information Bureau, Expert Copy Service, and Midland Office Service
 
 
 [2]
 The defendants-appellees are hereinafter referred to as "defendants". Other parties who were also named as defendants in the original complaint were subsequently dismissed from the suit
 
 
 [3]
 The complaint, as amended, asserts that plaintiffs' action arises under 15 U.S.C.A. §§ 1, 2, 13 and 15, and also under 47 U.S.C.A. §§ 153(a) and (h), 201(a) and (b), 202(a) and (c), 206 and 207
 
 
 [4]
 Plaintiffs also engage in other businesses including the operation of a letter copy and mimeographing service
 
 
 [5]
 The defendants removed the switchboard service and installed individual extension phones