**Levi CHAPIEWSKY, a sole proprietor d/b/a Chapiewsky Distributing Company; Leonard F. Killian, a sole proprietor d/b/a Old Style Lager Distributing Co.; and Milnor Homstad, a sole proprietor d/b/a Homstad Distributing Company, Plaintiffs,**

v.

**G. HEILEMAN BREWING COMPANY, a Wisconsin corporation, Defendant.**

**No. 68–C–116.**

United States District Court
W. D. Wisconsin.

Oct. 23, 1968.

Elliot S. Kaplan, Mark Rodman, Minneapolis, Minn., for plaintiffs.

T. H. Skemp, William P. Skemp, La Crosse, Wis., David E. Beckwith, Maurice J. McSweeney, Milwaukee, Wis., for defendants.

JAMES E. DOYLE, District Judge.

This is an action brought under the antitrust laws of the United States and under the laws of the State of Wisconsin. Plaintiffs' complaint alleges that certain alleged actions and practices of defendant constitute violations of Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1, 2) and Sections 133.01(1), 133.17, and 133.185, Wis. Stats. De-fendant has asserted that plaintiffs' claims for relief must be dismissed because they fail to state a claim upon which relief can be granted and because this court lacks jurisdiction over the subject matter.

From the face of plaintiffs' complaint it appears that plaintiffs are independent wholesale beer distributors; that each of the plaintiffs is a resident of Wisconsin; that defendant G. Heileman Brewing Company (hereinafter Heileman) is a brewer of beer and malt products, with breweries in Wisconsin and Kentucky, and with its principal office in La Crosse, Wisconsin; that there is a continuous flow in interstate commerce of substantial quantities of the beer and malt products manufactured by Heileman; that the brands of beer and malt products produced by Heileman compete, wherever they are sold, with beer and malt products produced by other interstate breweries; that in an area approximately bounded by the corporate limits of the city of La Crosse, Heileman is the exclusive seller of its products to retail accounts; that elsewhere the beer and malt products manufactured by Heileman are not distributed by Heileman directly to retailers but rather are sold by Heileman to independent distributors pursuant to wholesaler appointment agreements; that by the terms of these agreements the distributors assume all title, risk and dominion over Heileman's products at the time the distributors gain physical possession; that each of the plaintiffs is, and has been for some years, engaged in the distribution and sale at wholesale of Heileman's beer and malt products; and that plaintiffs sell Heileman's beer and malt products primarily to persons and firms engaged in the tavern business or the retail sales of packaged beer products in portions of the State of Wisconsin which are directly abutting and adjacent to the territory in which Heileman is the only source of supply of its product to retailers.

The complaint sets forth three claims for relief.

Under the first claim it is alleged that the wholesaler appointment agreements between Heileman and each of the plaintiffs and between Heileman and its other independent distributors include restrictions as to the areas in which and the customers to whom plaintiffs and the other independent distributors may resell Heileman beer and malt products; that by the terms of these wholesaler appointment agreements the wholesale prices at which plaintiffs and other independent distributors may resell Heileman beer and malt products are fixed, adhered to, stabilized, and maintained; that Heileman has utilized various methods to enforce said territorial restrictions and resale price restrictions; that Heileman has sold at unreasonably low prices to retailers within the area in which Heileman alone sells to retail accounts; and that other parties have conspired and combined with Heileman and have participated in this scheme. Among the effects alleged to have resulted from Heileman's practices are (1) the maintenance of wholesale prices for all beers and malt products at unreasonably and artificially low levels in the "Greater La Crosse Area Market" (defined as an area extending 65 miles in all directions from La Crosse and including portions of eastern Minnesota—hereinafter the GLAM), thereby restricting and discouraging competition by and between Heileman and other interstate breweries; and (2) the unreasonable restraint of competition in the production, distribution and sale of all beer and malt products in the GLAM, thereby restraining a substantial portion of interstate and intrastate commerce. These alleged practices of Heileman are said to violate Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1, 2) and § 133.01(1), Wis. Stats. The relief prayed for under this claim for relief includes treble damages and an order enjoining the continuation of Heileman's distribution plan.

Under the second claim for relief it is alleged that Heileman has charged plaintiffs unreasonably and discriminatorily higher prices for Heileman beer and malt products then it has charged its wholesale distributors in parts of the State of Wisconsin outside of the GLAM in violation of § 133.17, Wis. Stats.; and that Heileman has engaged in secret payment or allowance of rebates, refunds or unearned discounts to certain favored wholesale distributors located in portions of the State of Wisconsin outside the GLAM, in violation of § 133.-185, Wis. Stats. The relief prayed for under this claim for relief includes damages and an order requiring Heileman to sell and deliver its products to plaintiffs upon the same terms and conditions as Heileman sells and delivers its products to all other wholesale distributors located in the State of Wisconsin.

Under the third claim for relief plaintiff Chapiewsky alleges that Heileman terminated the wholesaler appointment agreement between Heileman and Chapiewsky without reasonable prior notification. This conduct is alleged to be unconscionable and in bad faith contrary to §§ 402.309(3), 401.203, Wis. Stats. Chapiewsky seeks damages and an order enjoining Heileman from terminating the agreement between Heileman and Chapiewsky except for good cause shown to this court and upon reasonable prior notification to Chapiewsky.

Heileman has filed four motions. The first requests dismissal of plaintiffs' claim for relief under Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1, 2) on the ground that it does not state a claim upon which relief can be granted (The motion is silent with respect to the allegation that the same alleged conduct violates § 133.01(1), Wis. Stats., but if the motion were granted as to the Sherman Act, this court would lose jurisdiction of this entire action, as explained later in this opinion). The second motion requests dismissal of plaintiffs' second and third claims for relief on the ground that the court lacks jurisdiction over the subject matter. The third motion requests that the complaint be dismissed or in the alternative that certain paragraphs of the complaint be stricken

because they are verbose and redundant of certain other paragraphs. The fourth motion requests that plaintiffs be required to state definitely the names of the alleged co-conspirators and to state separately and specifically each count and the specific section of the Sherman Act and the Clayton Act to which it pertains.

Defendant's first motion is directed at plaintiffs' Sherman Act allegations. These allegations are asserted to be defective on two grounds: (1) that the 21st Amendment operates to limit federal regulation of an industry engaged in the production of malt beverages; and (2) that the alleged practices of Heileman do not restrain interstate commerce.

■■■ It is true that by virtue of the provisions of the 21st Amendment the states are totally unconfined by traditional Commerce Clause limitations when they restrict the importation of intoxicants destined for use, distribution, or consumption within their borders. See State Board of Equalization v. Young's Market Co., 299 U.S. 59, 57 S. Ct. 77, 81 L.Ed. 38 (1936); cf. Mahoney v. Joseph Triner Corp., 304 U.S. 401, 58 S.Ct. 952, 82 L.Ed. 1424 (1938). But the 21st Amendment did not repeal pro tanto the Commerce Clause with respect to the power of Congress to regulate interstate commerce in intoxicating liquor, Hostetter v. Idlewild Bon Voyage Liquor Corp., 377 U.S. 324, 331–332, 84 S.Ct. 1293, 12 L.Ed.2d 350 (1964). Defendant does not claim that enforcement of the Sherman Act in this case conflicts in any way with the policy of the State of Wisconsin. In the absence of such a conflict, the 21st Amendment presents no barrier to the enforcement of the Sherman Act. See Frankfurter, J., concurring in United States v. Frankfort Distilleries, Inc., 324 U.S. 293, 301, 65 S.Ct. 661, 89 L.Ed. 951 (1945).

■■■ Heileman also contends that the Sherman Act is inapplicable here since the transactions complained of were wholly intrastate. It is well established, however, that the Sherman Act is not limited to transactions in interstate commerce, but extends to intrastate transactions which affect interstate commerce. See e. g., Mandeville Island Farms, Inc. v. American Crystal Sugar Co., 334 U.S. 219, 68 S.Ct. 996, 92 L.Ed. 1328 (1948); United States v. Yellow Cab Co., 332 U. S. 218, 67 S.Ct. 1560, 91 L.Ed. 2010 (1947); Jewel Tea Co. v. Local Unions, Etc., 274 F.2d 217 (7th Cir.), cert. denied 362 U.S. 936, 80 S.Ct. 757, 4 L.Ed. 2d 747 (1960).

United States v. Yellow Cab Co., supra; Gordon v. Illinois Bell Telephone Co., 330 F.2d 103 (7th Cir.), cert. denied 379 U.S. 909, 85 S.Ct. 197, 13 L.Ed.2d 182 (1964); Ace Beer Distributors, Inc. v. Kohn, Inc., 318 F.2d 283 (6th Cir.), cert. denied 375 U.S. 922, 84 S.Ct. 267, 11 L.Ed.2d 166 (1963); and Central Ice Cream Co. v. Golden Rod Ice Cream Co., 287 F.2d 265 (7th Cir.), cert. denied 368 U.S. 829, 82 S.Ct. 50, 7 L.Ed.2d 32 (1961), relied upon by defendant, are not applicable. In United States v. Yellow Cab Co., supra, and Gordon v. Illinois Bell Telephone Co., supra, the question was whether the activity involved was itself a part of interstate commerce. In Ace Beer Distributors, Inc. v. Kohn, Inc., the conduct complained of was the refusal of a brewery to deal with a beer distributor. It was not alleged that this refusal produced an unreasonable restraint of trade but only that defendants were attempting to eliminate plaintiff as a beer distributor in interstate commerce. It is well established that a mere refusal to deal, without more, does not constitute a violation of the Sherman Act. United States v. Colgate & Co., 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919). Central Ice Cream Co. v. Golden Rod Ice Cream Co., supra, was a case under Section 2 of the Clayton Act as amended by Section 1 of the Robinson-Patman Act (15 U.S.C. § 13). One of the elements required to establish a violation of that statute is a purchase in interstate commerce. It was this element that was absent, resulting in judgment for defendant.

■ Defendant cites Wisconsin's statutory scheme which is said to prevent one from engaging in the wholesale distribution of beer unless licensed by the state, and to prohibit licensed wholesalers from distributing outside Wisconsin. However, even if we were to assume that the wholesale distribution of beer is a wholly intrastate phenomenon in Wisconsin, this is not to exclude the possibility that interstate commerce may be affected by various arrangements and practices among such wholesalers, or among brewers and such wholesalers. Burke v. Ford, 389 U.S. 320, 88 S.Ct. 443, 19 L.Ed.2d 554 (1967).

■ Heileman also asserts that plaintiffs' allegations with respect to the impact of the transactions involved here on interstate commerce are insufficient. I conclude, however, that these allegations are sufficient as against a motion to dismiss. Summary dismissal in private antitrust actions should be sparingly granted because of the nature of the issues involved and because it may be difficult to plead more precisely the effects on interstate commerce until discovery has been had. See Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed. 2d 458 (1962); Radovich v. National Football League, 352 U.S. 445, 454, 77 S.Ct. 390, 1 L.Ed.2d 456 (1957); Clausen & Sons, Inc. v. Theo. Hamm Brewing Co., 284 F.Supp. 148, 154–155 (D.Minn. 1967); Donlan v. Carvel, 209 F.Supp. 829, 831 (D.Md.1962).

Brenner v. Texas Company, 140 F. Supp. 240 (N.D.Cal.S.D.1956), and Encore Stores, Inc. v. May Department Stores Co., 164 F.Supp. 82 (S.D.Cal.C. D.1958), cited by defendant, do not dictate a different result. In *Brenner*, the motion was for summary judgment and the court took into account the plaintiff's deposition as well as the complaint. In *Encore* the motion to dismiss was denied, although a motion to make more definite and certain was granted.

The motion to dismiss plaintiffs' first claim for relief is hereby denied.

■ Defendant's second motion is directed at plaintiffs' second and third claims for relief. These are claims based on state law and present no federal question. There is no diversity of citizenship between the parties. The only basis upon which this court could assume jurisdiction of these claims, therefore, is the doctrine of "pendent jurisdiction".

The concept of pendent jurisdiction was recently reexamined and reformulated in United Mine Workers of America v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), in which the Supreme Court reinterpreted the rule of Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148 (1933). In *Hurn* it had been held that state law claims are appropriate for federal court determination if they form a separate, but parallel, ground for relief also sought in a substantial claim under federal law. Permissible and impermissible exercises of federal judicial power over state law claims were distinguished in the following terms:

> "The distinction to be observed is between a case where two distinct grounds in support of a single cause of action are alleged, one only of which presents a federal question, and a case where two separate and distinct causes of action are alleged, one only of which is federal in character. In the former, where the federal question averred is not plainly wanting in substance, the federal court, even though the federal ground be not established, may nevertheless retain and dispose of the case upon the nonfederal *ground*; in the latter it may not do so upon the nonfederal *cause of action*." 289 U.S. at 246, 53 S.Ct. at 589. (Emphasis in original.)

In *Gibbs* the Supreme Court noted that *Hurn* was decided in 1933, before the adoption of the Federal Rules of Civil Procedure and at a time when the meaning of "cause of action" was a matter of considerable controversy. The phrase had several meanings. The court in *Hurn* identified what it meant by the

term by citation of Baltimore S. S. Co. v. Phillips, 274 U.S. 316, 47 S.Ct. 600, 71 L.Ed. 1069 (1927), a case in which the term had been used to denote the operative scope of the doctrine of *res judicata*. In that case also, as noted by the Supreme Court in *Gibbs*, it was remarked that " 'the whole tendency of our decisions is to require a plaintiff to try his whole cause of action and his whole case at one time.' " 274 U.S. at 320, 47 S.Ct. at 602. The citation of *Baltimore S.S. Co.*, said the court in *Gibbs*, indicated that the court in *Hurn* found that the policies of judicial economy and fairness to parties reflected in the doctrine of *res judicata* were strong counsel for the adoption of a rule which would permit federal courts to dispose of state as well as federal claims.

With the adoption of the Federal Rules of Civil Procedure, explained the court in *Gibbs*, much of the controversy over "cause of action" subsided, but the phrase remained the keystone of the *Hurn* test and resulted in considerable confusion. Since the formulation involved issues of jurisdiction as well as convenience, the policies underlying the meaning of "cause of action" as used in *Hurn* were obscured. The resulting tendency on the part of some courts was to limit the application of pendent jurisdiction to cases in which the state and federal claims were merely different terms employed to characterize the same set of circumstances. The Supreme Court contrasted with this tendency the impulse under the Federal Rules of Civil Procedure toward entertaining the broadest possible scope of action consistent with fairness to the parties and the liberal rules with regard to joinder of claims, parties, and remedies. Accordingly, the Supreme Court reformulated the test for pendent jurisdiction in the following terms:

> "Pendent jurisdiction, in the sense of judicial *power*, exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority' * * *

and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.' The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. * * * The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole." 383 U.S. at 725, 86 S.Ct. at 1138. (Emphasis in original.)

The Supreme Court recognized, however, that the power need not be exercised in every case in which it is found to exist and it set forth the standards applicable to the exercise of the power:

> "It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. Its justification lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them. * * * Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well. Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals. There may, on the other hand, be situations in which the state claim is so closely

tied to questions of federal policy that the argument for exercise of pendent jurisdiction is particularly strong. * * * Finally, there may be reasons independent of jurisdictional considerations, such as the likelihood of jury confusion in treating divergent legal theories of relief, that would justify separating state and federal claims for trial, Fed.Rule Civ.Proc. 42(b). If so, jurisdiction should ordinarily be refused." 383 U.S. at 726, 86 S.Ct. at 1139.

Finally, the Supreme Court noted that a court need not decide at the outset of the litigation whether to exercise the power:

"The question of power will ordinarily be resolved on the pleadings. But the issue whether pendent jurisdiction has been properly assumed is one which remains open throughout the litigation." *Id.*

■ Applying the approach set forth in the *Gibbs* case to the situation here, it does appear that pendent jurisdiction in the sense of judicial power exists with regard to plaintiffs' second and third claims for relief. The federal claim is substantial in that it charges a violation of Sections 1 and 2 of the Sherman Act. All three claims arise out of the business relations of the parties under the wholesaler appointment agreements. The second and third claims relate to the manner in which Heileman is said to have enforced the alleged territorial and price restrictions. The plaintiffs would ordinarily be expected to try all of these claims in one judicial proceeding. The federal and state claims derive from a "common nucleus of operative fact" although there is not complete identity of facts. Judicial power exists, in this court, therefore, to hear these state claims. See Robinson & Sons, Inc. v. Mister Donut of America, Inc., 270 F.Supp. 99 (D.Mass.1967); United States for Use and Benefit of Mandel Bros. Contracting Corp. v. P. J. Carlin Construction Co., 254 F.Supp. 637 (E.D.N.Y.1966); cf. American Foresight of Philadelphia, Inc. v. Fine Arts Sterling Silver, Inc., 268 F.Supp. 656 (E.D.Pa.1967).

■ As *Gibbs* makes clear, however, the inquiry with regard to the exercise of pendent jurisdiction does not end with a determination of judicial power to hear the state claims in this proceeding. The exercise of that power is discretionary. Applying the standards set forth in *Gibbs*, I conclude that plaintiffs' second claim for relief should be dismissed.

■ Plaintiffs' second claim for relief is predicated on Heileman's alleged violation of §§ 133.17 and 133.185, Wis. Stats. Neither of these statutes provides for civil liability in case of violation. § 133.17 was enacted in 1913 and § 133.185 was enacted in 1935, yet there have been no reported civil cases brought in the state courts under these statutes. The failure of the legislature to provide a civil remedy for the violation of these statutes stands in contrast to the civil liability provided in § 133.-01(1). § 133.19 provides that the state attorney general shall direct all prosecutions for violations of these sections. While § 133.27 provides that §§ 133.17 and 133.185 shall be liberally construed so that their purposes may be subserved, that does not mean that a remedy, not provided in the statutes, will necessarily be read into them.

Plaintiffs contend that these sections are merely legislative codifications of unfair business practices which Wisconsin courts have long considered to constitute acts of unfair competition. The cases cited by plaintiffs are not wholly persuasive on this point. All involved a conspiracy or combination intended to injure a person in his business. They did not involve the difficult and complex issues of price discrimination and rebates involved in an action brought under §§ 133.17 and 133.185. It is not at all clear, therefore, that the state courts would entertain a civil action under either of these statutes.

There is an additional reason with respect to § 133.185 why this court should

decline to exercise pendent jurisdiction. It is not at all clear from the face of that provision that the secondary as well as the primary level of competition is protected. The Wisconsin courts have not construed this provision. The California Supreme Court has construed a remarkably similar, although not precisely identical, provision to protect only competition at the primary level. Harris v. Capitol Records Distributing Corp., 64 Cal.2d 454, 50 Cal.Rptr. 539, 413 P.2d 139 (1966).

Refusal to exercise pendent jurisdiction with regard to plaintiffs' second claim for relief would appear to be a sound exercise of discretion. "Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." United Mine Workers of America v. Gibbs, *supra*, 383 U.S. at 726, 86 S.Ct. at 1139. See Saler v. Renaire Foods, Inc., 283 F.Supp. 297 (E.D.Pa.1968); Wilson H. Lee Co. v. New Haven Printing Pressmen Local Union No. 74, 255 F.Supp. 929 (D.Conn.1966); Note, "UMW v. Gibbs and Pendent Jurisdiction", 81 Harv.L.Rev. 657, 666 (1968).

With regard to plaintiffs' third claim for relief, I conclude that the exercise of pendent jurisdiction has not yet been shown to be unwise. Heileman urges that § 402.309(3) has not yet been construed by the Wisconsin courts. But there does appear to be at least one lower court decision construing this provision. Ousterling v. G. Heileman Brewing Co., Inc., Circuit Court, Dodge County, August 15, 1968. In addition there is at least one case in another jurisdiction construing this provision which is part of the Uniform Commercial Code in a situation very similar to the one at bar. See Sinkoff Beverage Co., Inc. v. Joseph Schlitz Brewing Co., 51 Misc.2d 446, 273 N.Y.S.2d 364 (S.Ct. Suffolk Co. 1966). In addition, cases involving unconscionability under 2–302 of the Uniform Commercial Code (§ 402.302, Wis. Stats.) will be pertinent to the inquiry.

297 F.Supp.—3½

It does not now seem appropriate to dismiss the third claim although the issue will remain open throughout the litigation.

Defendant's motion to dismiss the second claim for relief is hereby granted. Defendant's motion to dismiss the third claim for relief is hereby denied without prejudice.

Defendant's third motion is directed at the alleged verbosity and redundancy of certain paragraphs in the complaint. These paragraphs are adequate and need not be modified. Defendant's third motion is hereby denied.

Defendant's fourth motion seeks a more definite statement as to the names of alleged co-conspirators and more specificity with regard to each allegation in the complaint and the sections of the Sherman Act to which it pertains. The exact identity of the alleged co-conspirators is something that may be developed during the course of discovery proceedings. This information is unnecessary to enable defendant to form a responsive pleading to plaintiffs' complaint. The allegations in the complaint and their relation to sections of the Sherman Act are sufficiently specific.

Defendant's fourth motion is hereby denied.