Terril W. **HUELSMAN**; Richard K. **Yackey**, Appellants,

v.

**CIVIC CENTER CORPORATION**; Sportservice Corporation, Appellees.

No. 88–2153.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 12, 1989.

Decided May 9, 1989.

---

Robert J. Selsor, St. Louis, Mo., for appellants.

Peter E. Moll, Washington, D.C., and Alan C. Kohn, St. Louis, Mo., for appellees.

Before WOLLMAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and BEAM, Circuit Judge.

BRIGHT, Senior Circuit Judge.

Terril Huelsman and Richard Yackey appeal the district court's [1] order dismissing

1. The Honorable William L. Hungate, United    States District Judge for the Eastern District of

their antitrust action, 690 F.Supp. 825, contending that the district court erred in finding that their amended complaint failed to satisfy the jurisdictional requirements of the Sherman Act. On review of the present record, we agree that Huelsman and Yackey failed to satisfy the burden of establishing the requisite nexus with interstate commerce. Accordingly, we affirm.

## I. BACKGROUND

Huelsman and Yackey have operated as self-employed licensed street vendors selling goods and merchandise to the public before and during scheduled baseball games and other events at Busch Stadium in St. Louis. Civic Center Corporation (Civic Center) owns, manages and operates Busch Stadium. Sportservice Corporation (Sportservice) has a contract with Civic Center to sell souvenirs and refreshments inside Busch Stadium. Both Civic Center and Sportservice are Missouri for-profit corporations.

On March 23, 1984, only eleven days before the opening of the 1984 baseball season, the City of St. Louis enacted an ordinance prohibiting vending on any public street within a specified geographic area.[2] An exception to the ordinance authorized vending in a specified area immediately surrounding Busch Stadium only if the vendors were parties to a street vending agreement with Civic Center. The ordinance further provided that a violation of the ordinance constitutes a misdemeanor punishable by imposition of a fine.

Pursuant to this ordinance, Civic Center awarded a contract for vending services to Sportservice. Huelsman and Yackey characterize this contract as one granting Sportservice exclusive control over selling goods and merchandise outside the stadium area. In their view, the exclusive nature of the contract effectively forced the closing of their vending operations because they faced the threat of prosecution if they continued their vending operations without an agreement with Civic Center, an option not available to them.

On July 31, 1987, Huelsman and Yackey filed a three-count complaint in federal district court, alleging violations of sections 1 and 2 of the Sherman Act and a pendent state-law claim of tortious interference with business expectancies. Specifically, they alleged that Civic Center and Sportservice: (1) conspired to restrain and eliminate the free and open competition that previously existed in the sale of goods sold in the Busch Stadium area; (2) acted in furtherance of a monopoly or an attempt to monopolize by controlling all aspects of the vending industry in the stadium area; and (3) tortiously interfered with the valid business relations of the vendors. Huelsman and Yackey further alleged that Civic Center, in a quid pro quo exchange with the City of St. Louis, agreed to spend $1,000,-000 on landscaping the area immediately adjacent to Busch Stadium in return for passage of the vending ordinance.

Civic Center filed a motion to dismiss the complaint under Fed.R.Civ.P. 12(b)(1) and

---

Missouri.

2. Ordinance 59090 reads:

An ordinance to amend Section 2 of Ordinance 58514, approved March 1, 1982, to revise the area where the selling or offering for sale or permitting the offering or selling of goods, merchandise, food, horticulture products or services is prohibited; and for an exception during the period of an agreement with the Civic Center Corporation for the designated area surrounding Busch Stadium; and containing an emergency clause.

\* \* \* \*

Section One. Section Two of Ordinance 58514, approved March 1, 1982, is hereby amended to read as follows:

Area prohibited to selling. No person shall sell or offer for sale or permit the offering or selling of goods, merchandise, food, horticulture products or services upon any public streets \* \* \* except during the periods of time described below.

[Exceptions 1 and 2 not applicable].

3. [W]ithin which such person is a party to an agreement providing for such street vending, with the Civic Center Corporation. (See Exhibit A—a letter from Civic Center Corporation outlining the general conditions which it anticipates such an agreement will include.)

\* \* \* \*

Any person, firm or corporation violating the provisions of this Ordinance shall be deemed guilty of a misdemeanor and, upon conviction thereof, shall be fined a sum of not less than Twenty–Five Dollars ($25.00), nor more than Five Hundred Dollars ($500.00).

12(b)(6) raising four grounds: (1) failure to allege a sufficient nexus with interstate commerce; (2) immunity under the *Noerr–Pennington* doctrine; (3) exemption from antitrust liability under the state action doctrine; and (4) lack of standing to sue. Sportservice moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) or for summary judgment under Fed.R.Civ.P. 56 on the same grounds. Huelsman and Yackey responded by amending their complaint to include allegations of a nexus with interstate commerce. Civic Center and Sportservice then renewed their motions, citing the same grounds. Throughout the litigation, no party had engaged in discovery.

Following briefing and oral argument, the trial court dismissed the federal claims without prejudice, stating that Huelsman and Yackey failed to allege a sufficient "nexus between the defendants' conduct and interstate commerce," and refrained from addressing the remaining grounds in the motions. The court also dismissed the pendent state-law claim without prejudice, noting the availability of a state forum.

Huelsman and Yackey then brought this appeal.

## II. DISCUSSION

Huelsman and Yackey challenge the district court's dismissal of their amended complaint on the ground that they have sufficiently pleaded the required nexus between the defendants' conduct and interstate commerce to establish subject matter jurisdiction under the Sherman Act.

In reviewing a district court's dismissal of an antitrust case before the initiation of discovery, an appellate court must employ a "concededly rigorous standard" of scrutiny. *Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976). Initially, we note the existence of a policy disfavoring the dismissal of antitrust actions before discovery begins because the proof of illegal conduct lies largely in the hands of the alleged conspirators. *Id.; Quality Mercury, Inc. v. Ford Motor Co.*, 542 F.2d 466, 472 (8th Cir.1976), *cert. denied*, 433 U.S. 914, 97 S.Ct. 2986, 53 L.Ed.2d 1100

(1977); *see also Tarleton v. Meharry Medical College*, 717 F.2d 1523, 1529 (6th Cir. 1983) (dismissals of antitrust claims prior to discovery should be granted very sparingly); *Chapiewsky v. G. Heileman Brewing Co.*, 297 F.Supp. 33, 38 (W.D. Wis.1968) (recognizing the difficulty of precisely pleading the effects on interstate commerce before completion of discovery).

The record does not clearly indicate whether the district court dismissed the complaint for lack of subject matter jurisdiction under Rule 12(b)(1) or for failure to state a claim upon which relief could be granted under Rule 12(b)(6). Under either standard, the dismissal is on the pleadings and should be "granted sparingly and with caution." 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1349 at 541 (1969). As the district court correctly noted, whether the dismissal is granted under either rule, the same interstate commerce analysis applies—whether the complaint adequately alleges the nexus between defendants' conduct and interstate commerce. *See Hospital Bldg. Co.*, 425 U.S. at 742 n. 1, 96 S.Ct. at 1851 n. 1.

Jurisdiction under the Sherman Act arises when anticompetitive activity prohibited by the Act occurs in the flow of interstate commerce or, where wholly local in nature, substantially affects interstate commerce. *McLain v. Real Estate Bd. of New Orleans, Inc.*, 444 U.S. 232, 241, 100 S.Ct. 502, 508–09, 62 L.Ed.2d 441 (1980); *Hayden v. Bracy*, 744 F.2d 1338, 1342 (8th Cir.1984). In situations where the source or application of the business restraint is entirely local, jurisdiction will lie if the necessary effect is to stifle or restrain commerce among the states. *United States v. Women's Sportswear Mfr.'s Ass'n*, 336 U.S. 460, 464, 69 S.Ct. 714, 716, 93 L.Ed. 805 (1949). As Justice Jackson stated: "If it is interstate commerce that feels the pinch, it does not matter how local the operation which applies the squeeze." *Id.*

As a procedural matter, a plaintiff attempting to invoke the jurisdiction of the Sherman Act must do more than merely identify a relevant local activity and pre-

sume an interrelationship with some unspecified aspect of interstate commerce. *McLain,* 444 U.S. at 242, 100 S.Ct. at 509. Rather, the plaintiff:

> must allege the critical relationship in the pleadings and if these allegations are controverted must proceed to demonstrate by *submission of evidence beyond the pleadings* either that the defendants' activity is itself in interstate commerce or, if it is local in nature, that it has an effect on some other appreciable activity demonstrably in interstate commerce.

*Id.* (emphasis added); *Heille v. City of St. Paul, Minn.,* 671 F.2d 1134, 1136 (8th Cir. 1982) (quoting *McLain* ).

While it is unnecessary for the plaintiff to submit evidence quantifying the adverse impact of the defendant's conduct, *McLain,* 444 U.S. at 243, 100 S.Ct. at 509–10, a plaintiff must demonstrate that this conduct "as a matter of practical economics" has a substantial effect on interstate commerce. *Hospital Bldg. Co.,* 425 U.S. at 745, 96 S.Ct. at 1852–53. Additionally, a plaintiff must demonstrate that the defendant's *alleged unlawful conduct,* and not the defendant's *general activities,* substantially affects interstate commerce. *Hayden,* 744 F.2d at 1343 n. 2. Lastly, no talismatic test exists to determine the adequacy of the interstate commerce nexus under the effects test; rather, jurisdiction must be determined through a case-by-case analysis of the relevant economic facts. *Heille,* 671 F.2d at 1136.

In this case, no party contends that the conduct at issue is itself "in" interstate commerce. Therefore, the controversy rests on whether the appellees' alleged illegal conduct substantially affects interstate commerce.

As proof of the existence of a substantial effect on interstate commerce, Huelsman and Yackey point to portions of the complaint which allege that they purchased goods from out-of-state distributors and sold goods to out-of-state visitors. They also submit Richard Yackey's affidavit,

which contains estimates of the volume of the merchandise purchased and sold, the state residencies of those purchasing the merchandise and the manufacturing location of the merchandise.

In response, Civic Center and Sportservice argue that the complaint pleads only conclusory allegations of an effect on interstate commerce. They contend that even if Huelsman and Yackey purchased goods from out-of-state distributors or sold to out-of-state visitors, the volume of these purchases and sales was so small that as a matter of practical economics, there was no substantial effect on interstate commerce. Additionally, they argue that the amended complaint contains no allegations regarding the activities in interstate commerce of Civic Center and Sportservice, but only address Huelsman and Yackey's activities.

■ Civic Center and Sportservice also assert in a motion to strike that Richard Yackey's affidavit is improperly before this court because it was not part of the record before the district court, but had been prepared recently for this appeal.

In considering the motion, we note that Richard Yackey's affidavit was not a part of the original record in the district court. An appellate court can properly consider only the record and facts before the district court and thus only those papers and exhibits filed in the district court can constitute the record on appeal. Fed.R.App.P. 10(a), 8th Cir.R. 7. *See United States v. Drefke,* 707 F.2d 978, 983 (8th Cir.), *cert. denied,* 464 U.S. 942, 104 S.Ct. 359, 78 L.Ed.2d 321 (1983); *accord Henn v. National Geographic Soc'y,* 819 F.2d 824, 831 (7th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 454, 98 L.Ed.2d 394 (1987); *United States v. Thomann,* 609 F.2d 560, 566 (1st Cir.1979). Because this affidavit is presented for the first time at the appellate stage, it is not part of the record for our review. Therefore, we cannot consider it as evidence of the nexus with interstate commerce. We grant the motion to strike.[3]

---

3. Huelsman and Yackey rely on *Heille v. City of St. Paul, Minn.,* 671 F.2d 1134 (8th Cir.1982), to oppose the motion to strike. This reliance, however, is misplaced. In the context of whether the plaintiff had received the procedural safeguards due him when a court considers a Rule

██ In looking at the record presented before the district court, we cannot say that the trial court incorrectly concluded that Huelsman and Yackey failed to demonstrate the required nexus with the interstate commerce. As required under *McLain* and *Heille*, Huelsman and Yackey alleged in the amended complaint that Civic Center and Sportservice's alleged anti-competitive and monopolistic activities resulted in the closing of their vending operations, which included sales to out-of-state visitors and purchases from out-of-state distributors. Civic Center and Sportservice in turn contended that these allegations were insufficient to show any substantial effect on interstate commerce and that they amounted to mere conclusions. The burden then shifted back to Huelsman and Yackey to submit evidence beyond the pleadings to support the nexus with interstate commerce element. Huelsman and Yackey failed to submit any additional evidence on this point.[4]

In sum, after reviewing the allegations contained in the first amended complaint,[5] we agree that these matters amount to mere conclusions. After the motions to dismiss were filed, Huelsman and Yackey did not come forward with any factual information to support these conclusions. Therefore, they failed to shoulder their burden of proof. *See McLain*, 444 U.S. at 242, 100 S.Ct. at 509.

██ We observe that the trial court dismissed the amended complaint without prejudice. Dismissal without prejudice operates to leave the parties as though no action has been brought at all, *Moore v. St. Louis Music Supply Co.*, 539 F.2d 1191, 1194 (8th Cir.1976), and does not preclude relitigation of the claims so dismissed. *Comerio v. Beatrice Foods Co.*, 600 F.Supp. 765, 768 (E.D.Mo.1985). Therefore, Huelsman and Yackey will have an opportunity to replead their case, should they produce facts establishing the requisite nexus with interstate commerce.

## III.  CONCLUSION

We affirm the dismissal of the amended complaint without prejudice.

12(b)(6) motion, this court referred in passing to the plaintiff's failure to offer additional factual material on appeal. We do not read this passage as holding that an appellant can supplement the appellate record with evidence not presented to the trial court. Rather, we view this case as harmonious with our reiteration today of the long standing rule that the appellate record consists only of those facts and material presented for the district court's consideration.

4. The only evidence submitted by Huelsman and Yackey besides the amended complaint are a motion and two supporting memoranda of law which oppose the motions to dismiss. The memo addressing the interstate commerce question contains no additional factual information that is not already contained in the amended complaint. Furthermore, the transcript of the hearing reveals that no additional facts on this issue were presented to the trial court.

5. The relevant portions of the first amended complaint allege:
    5. Plaintiffs are vendors who offered their "merchandise to members of the public from various states of these United States attending various attractions at Busch Stadium;"
    6. The merchandise was "purchased for sale in interstate commerce; and subsequently, sold by the vendors to citizens of Illinois and many other states during sporting events and scheduled attractions at Busch Stadium thereby having an appreciable and substantial effect on interstate commerce;"
    7. and 8. Defendants and unidentified others met and agreed to restrain trade and eliminate competition in "the geographic market consisting of the outside area immediately adjacent to Busch Stadium. This area was attended by citizens of different states on a regular basis * * * and as such, the elimination of competition in this area affected interstate commerce;"
    13. "[D]ue to the license agreement * * * the public, including citizens of many different states, is detrimentally affected * * *. Competition has been eliminated [sic] and the consuming public has suffered in having to purchase goods, wares and merchandise of lesser quality at monopolistic prices;"
    14. and 16. The intended effects of defendants' conduct are to maintain Sportservice's market position, to prevent and eliminate competition in the relevant geographic area, to increase Civic Center's revenues from Sportservice's payments, to cause the public to pay higher prices, to "inhibit and prevent the growth of plaintiffs' businesses and destroy [plaintiffs'] businesses."