744 F.2d 1338
 40 Fed.R.Serv.2d 167, 1984-2 Trade Cases 66,212
 Virgil L. HAYDEN, M.D., Appellant,
v.
Calvin BRACY, M.D., T.S. Devi, M.D., S.P. Kaipa, M.D., C.R.
Simmons, M.D., R.L. Ross, M.D., John Crenshaw, M.D., L.G.
Langston, M.D., W.J. Wilkins, M.D., T.E. Townsend, M.D.,
J.S. Robinette, M.D., K.L. Bruce-Reid, M.D., R.C. Butler,
M.D., J.F. Clark, M.D., E.L. Hutchison, M.D., W.R. Meredith,
M.D., M.B. Pearce, M.D., V.B. Perry, M.D., J.W. Nuckolls,
M.D., R. Teryl Brooks, M.D., Clarence M. Rittelmeyer, M.D.,
Oliver C. Raney, M.D., Larry O. Barton, and Jefferson
Regional Medical Center (Formerly Jefferson Hospital) a/k/a
Jefferson Hospital Association, Inc., Appellees.
 No. 83-2401.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 14, 1984.
Decided Sept. 27, 1984.
 
 House, Wallace & Jewell, P.A. by Anne Owings Wilson, Little Rock, Ark., for appellant.
 Friday, Eldredge & Clark by Diane S. Mackey, Little Rock, Ark., and Bridges, Young, Matthews, Holmes & Drake by Stephen A. Matthews, Pine Bluff, Ark., for appellees.
 Before BRIGHT and McMILLIAN, Circuit Judges, and LIMBAUGH,* District Judge.
 BRIGHT, Circuit Judge.
 
 
 1
 Dr. Virgil L. Hayden brought this action in federal district court against the Jefferson Regional Medical Center (Medical Center), its administrator, and twenty-one doctors on the hospital medical staff. He alleged that in taking disciplinary action against him, defendants 1) denied him equal protection and due process in violation of the fourteenth amendment and 42 U.S.C. Sec. 1983; 2) conspired to form a group boycott against him and combined to assert monopoly power in violation of sections 1 and 2 of the Sherman Antitrust Act; 3) made defamatory statements about him; and 4) interfered with and conspired to interfere with his business relationships. The district court granted defendants' motion for summary judgment on the section 1983 and Sherman Act claims and, after a bench trial, entered judgment for defendants on the other claims.
 
 
 2
 Hayden appeals, contending that the district court erred in 1) denying his motion to discover certain medical records; 2) dismissing his section 1983 claim for failure to show state action; 3) dismissing his Sherman Act claims for lack of subject matter jurisdiction; 4) finding that defendants' statements were not defamatory; 5) finding that defendants did not interfere with his prospective business relationships; and 6) finding that defendants followed the Medical Center's bylaws in conducting disciplinary proceedings against him. We reject these contentions and affirm the district court.
 
 
 3
 I. BACKGROUND.
 
 
 4
 Hayden practiced obstetrical-gynecological medicine at the Medical Center from July 1973 until his resignation on January 15, 1982. The events leading to his resignation began on December 4, 1979 when Dr. Mary Ellen Jenkins, an anesthesiologist, wrote to the Obstetrics-Gynecology (OB/GYN) Department questioning whether a cesarean section Hayden performed had been necessary. Defendant Calvin Bracy, M.D., the chairperson of OB/GYN Department, appointed a committee consisting of several doctors in the department to review Dr. Jenkins' complaint. The committee concluded that Hayden's performance of two cesarean section operations[1] was inappropriate and, after a meeting of the entire department at which Hayden was present, forwarded their conclusions to the Executive Committee of the Medical Staff.
 
 
 5
 At the direction of the Executive Committee, an OB/GYN departmental ad hoc committee investigated further to determine whether corrective action should be taken against Hayden. The ad hoc committee notified Hayden of its proceedings and afforded him an opportunity to respond to the charges. On March 11, 1980, the Executive Committee agreed to the ad hoc committee's recommendation of corrective action and required Hayden to obtain mandatory consultations on all cesarean sections for six months. At Hayden's request, another committee conducted a hearing to consider the propriety of the corrective action and agreed with the Executive Committee's decision.
 
 
 6
 In September 1980, the members of the OB/GYN Department reviewed the charts for Hayden's cesarean operations for the previous six months. They recommended to the Executive Committee that his probation continue until February 1, 1981 and that he attend two weeks of continuing education in obstetrics. At Hayden's request, the Executive Committee appointed a disinterested expert to review his charts. The expert, Dr. Ralph Wynn, chairperson of the OB/GYN Department at the University of Arkansas Medical School, reported that Hayden's failure to document the need for the cesarean sections that led to the original complaint justified the requirement that he obtain mandatory consultations, but noted that Hayden acted appropriately in performing cesareans during his probation. Dr. Wynn recommended that the compulsory consultations be discontinued so as not to expose the consulting physicians to liability, and suggested that the department monitor Hayden's cesarean patients for six more months. On October 28, 1980, the Executive Committee adopted these recommendations, adding its directive that Hayden obtain voluntary consultations for the next six months and that he voluntarily obtain two weeks of continuing education.
 
 
 7
 In April 1981, the Executive Committee inquired whether Hayden had complied with its mandates and recommendations. Hayden informed the committee that he did not obtain post-graduate education because he could not find other physicians to cover his patients for him, and that he was no longer seeking consultations on his cesarean cases because only two physicians would provide consultations. At the direction of the Executive Committee, a control committee of the OB/GYN Department reviewed Hayden's cesarean charts for the previous six months. The committee concluded that Hayden had exercised poor medical judgment in six of the thirty cases they examined. On May 18, 1981, after reviewing Hayden's medical charts, the entire OB/GYN Department unanimously agreed with this conclusion. The department members reported that Hayden had met efforts to assist him with hostility and they disassociated themselves from him. On the basis of these reports, the Executive Committee revoked Hayden's privileges, but noted that its decision would not be effective until he exhausted his appeals.
 
 
 8
 In accordance with the Medical Center's bylaws, the Executive Committee asked Dr. Bracy to form an ad hoc committee to investigate the revocation of Hayden's privileges. The ad hoc committee discussed with Hayden the charts indicating that he had exercised poor medical judgment and recommended that his privileges be revoked. On June 30, 1981, the Executive Committee examined members of the ad hoc committee and Hayden, and agreed once again to revoke Hayden's privileges.
 
 
 9
 Hayden appealed this decision to another ad hoc committee. The ad hoc committee concluded that the evidence did not support the decision to revoke Hayden's privileges, but recommended that he participate in a post-graduate obstetrics program of not less than thirty days. Based on this report, the Executive Committee recommended that Hayden's privileges not be revoked, but recommended that he obtain ninety days of post-graduate education within the next six months. After the doctors in the OB/GYN Department agreed to provide coverage for Hayden, the Governing Board of the Medical Center affirmed the decision of the Executive Committee on December 17, 1981.
 
 
 10
 Hayden closed his Pine Bluff practice on January 15, 1982, and relocated in Sidney, Montana. On November 17, 1982, he brought this action in federal district court.
 
 
 11
 II. DISCUSSION.
 
 
 12
 A. Discovery Ruling.
 
 
 13
 Hayden contends that the district court erred in denying his motion to discover medical records pertaining to cesarean sections performed by other doctors in the OB/GYN Department. He argues that insofar as the medical records show that he performed as well or better than his colleagues, they are relevant to his claim that defendants acted maliciously in disciplining him for exercising poor medical judgment. In denying the motion, the district court ruled that evidence of other doctors' poor judgment is not relevant to Hayden's allegation that defendants misrepresented their conclusions about his performance.
 
 
 14
 Determinations of relevance in discovery rulings are left to the sound discretion of the trial court and will not be reversed absent an abuse of discretion. See Admiral Theatre Corp. v. Douglas Theatre Co., 585 F.2d 877, 898 (8th Cir.1978); Liew v. Breen, 640 F.2d 1046, 1049 (9th Cir.1981). Although the medical records Hayden sought to discover may have had tangential relevance to his claim, we cannot say the district court abused its discretion in denying the motion. In any event, given the strong evidence supporting the district court's finding that defendants acted without malice, the court's refusal to order discovery of the medical records does not amount to reversible error. See Data Disc., Inc. v. Systems Tech. Associates, Inc., 557 F.2d 1280, 1285 n. 1 (9th Cir.1977) (district court's discovery rulings "will not be reversed except upon clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant").
 
 
 15
 B. Section 1983 Claim.
 
 
 16
 Hayden next challenges the district court's dismissal of his section 1983 claim. In his complaint, Hayden alleged that the peer review proceedings leading to the disciplinary action against him deprived him of his right to due process and equal protection. The district court held that defendants did not act under color of state law and dismissed the claim for lack of subject matter jurisdiction.
 
 
 17
 Hayden contends that although the Medical Center is a private hospital, its close relationship with the state is sufficient for state action to arise. We disagree. In Lubin v. Crittenden Hospital Associates, Ltd., 713 F.2d 414 (8th Cir.1983), cert. denied, --- U.S. ----, 104 S.Ct. 1282, 79 L.Ed.2d 685 (1982), we held that a private hospital's disciplinary action against one of its doctors did not constitute state action, notwithstanding the state's extensive regulation and support of the hospital. Id. at 416. Hayden concedes that his position is contrary to our holding in Lubin, but nevertheless asks us to reconsider that decision. We decline to do so. Lubin is controlling law in this circuit and, unless overruled by a higher authority, it binds our decision in this case.
 
 
 18
 C. Sherman Act Antitrust Claims.
 
 
 19
 Hayden also challenges the summary dismissal of his Sherman Act claims. He alleged that by requiring him to complete the post-graduate education, defendants conspired to form a group boycott against him in violation of section 1 of the Sherman Act, and illegally combined to assert monopoly power in violation of section 2 of the Act. Defendants moved for summary judgment on the ground that Hayden failed to allege that their actions occurred in or affected interstate commerce. After considering the pleadings and affidavits relating to business activities of Hayden and the Medical Center, the district court entered summary judgment against Hayden on these claims.
 
 
 20
 Jurisdiction under the Sherman Act arises only when the anticompetitive activity prohibited by the Act occurs in the flow of interstate commerce, or, though wholly local in nature, substantially affects interstate commerce. See McLain v. Real Estate Board, 444 U.S. 232, 241, 100 S.Ct. 502, 508, 62 L.Ed.2d 441 (1980); Cardio-Medical Association v. Crozer-Chester Medical Center, 721 F.2d 68, 71 (3d Cir.1983). Hayden claims only that defendants' conduct affects interstate commerce. He alleged in his amended complaint that defendants' actions 1) substantially raise prices for out-of-state patients obtaining obstetrical-gynecological services in Jefferson County and 2) substantially increase the costs of out-of-state third parties, such as the federal government and private insurance companies, that pay for patients' medical care. Hayden supported these allegations with an affidavit in which he stated that he annually purchased $6,000 worth of office supplies from out-of-state vendors, and that he annually received over $100,000 (75% of his billings) from out-of-state insurance companies. Further, Hayden refers to the interrogatory answers of the hospital administrator indicating that the bills of 88% of the hospital patients were paid by third-party payors, 33% of which were Medicare payments.
 
 
 21
 Hayden contends that these allegations, together with other supporting evidence, were sufficient to withstand defendants' motion for summary dismissal. We disagree. The jurisdictional reach of the Sherman Act, although expansive, is not without limit. For federal jurisdiction to arise, the antitrust plaintiff must show that the alleged restraint[2] would tend, " 'as a matter of practical economics' to have a not insubstantial effect on the interstate commerce involved." McLain v. Real Estate Board, supra, 444 U.S. at 246, 100 S.Ct. at 511. See also Hospital Building Co. v. Trustees, 425 U.S. 738, 745 and n. 3, 96 S.Ct. 1848, 1852 and n. 3, 48 L.Ed.2d 338 (1976); Crane v. Intermountain Health Care, Inc., 637 F.2d 715, 723 (10th Cir.1980); P. Areeda, Antitrust Law p 232.1 at 94 (Supp.1982). The uncontroverted evidence in this case simply shows that defendants required Hayden to attend ninety days of post-graduate education, and that they agreed to provide coverage so that he would be able to do so. As a matter of practical economics, this requirement does not substantially affect interstate commerce. Hayden's attendance at post-graduate courses would not substantially disrupt his practice because his colleagues agreed to cover for his patients. Consequently, medical services provided to Hayden's patients, the purchases of out-of-state office supplies, and the reimbursements from third party payors would not be altered in any substantial amount. Defendants neither excluded Hayden from practice nor permanently denied him a chance to compete effectively. They simply required him to obtain additional training and improve his medical skills. Such a requirement cannot meaningfully be characterized as substantially affecting interstate commerce.
 
 
 22
 D. Defamation Claims.
 
 
 23
 Hayden next challenges the district court's finding that defendants' statements about him were not defamatory. He alleged that in the course of the peer review proceedings, defendants made numerous untrue and adverse statements about his integrity, his mental stability, and his ability to practice medicine. Hayden recognizes that defendants are entitled to qualified immunity for their statements made in the course of hospital peer review proceedings,[3] ] but contends that they acted with malice and made no attempt to establish the truth of the charges against him.
 
 
 24
 After hearing the evidence, the district court found that defendants did not act with malice or bad faith in reviewing Hayden's actions. Indeed, the evidence overwhelmingly shows that defendants made every attempt to give Hayden a fair hearing to determine whether he exercised proper judgment in performing cesarean sections. For nearly two years, they conducted a labyrinthine series of investigations, de novo hearings, and appellate hearings. At Hayden's request, his charts were reviewed by a disinterested expert, who, for the most part, agreed with the actions defendants had taken. Throughout the review proceedings Hayden received notice of and an opportunity to respond to the charges against him. The district court found that the peer review committees were fair and impartial, and that they required Hayden to obtain consultations and continuing education in the reasonable good faith belief that his performance was inadequate. Although defendants made several untoward remarks about Hayden in the course of the proceedings, the district court found that, considered in the context of the entire proceedings, the remarks were insignificant and did not affect the outcome. Based on our review of the record, we conclude that substantial evidence supports the district court's finding that defendants acted reasonably and in good faith in conducting the review proceedings. Thus, we reject the defamation claim made in this appeal.[4]
 
 
 25
 E. Conspiracy Claims.
 
 
 26
 Hayden next contends that the district court erred in finding that defendants did not conspire to interfere with his practice. Hayden alleged that defendants had conspired against him by deliberately and maliciously stating that his practice was below medical standards; by preventing him from obtaining adequate coverage for his patients so he could attend continuing education classes; by disciplining him with the knowledge that the charges against him were false; by denying him the real opportunity to be heard; and by singling him out for review. In sum, he contends that the unfairness of the review proceedings leads inescapably to the conclusion that defendants joined together to interfere with his livelihood.
 
 
 27
 The district court found that Hayden failed to prove that defendants conspired to interfere with his practice. Specifically, the court rejected his contentions that he was singled out for review and denied a fair opportunity to be heard. It also discredited Hayden's excuses for failing to obtain adequate coverage. Finally, the court found that throughout the review proceedings defendants acted reasonably and in good faith. Again, these findings receive overwhelming support from the record, and we conclude that Hayden failed to establish any unlawful conspiracy.[5]
 
 
 28
 III. CONCLUSION.
 
 
 29
 In reviewing the defamation and conspiracy claims, we need not consider whether or not Hayden exercises good medical judgment in performing cesarean sections. That task is best left to the peer review committee members whose training and experience better qualifies them to make such judgments. Our role is simply to ensure that the committee members act within their area of expertise, that their proceedings are fair, and that they act reasonably in imposing sanctions. As Judge Goldberg aptly remarked, "[c]ourts must not attempt to take on the escutcheon of Caduceus." Sosa v. Board of Managers, 437 F.2d 173, 177 (5th Cir.1971).
 
 
 30
 As noted, the evidence in this case overwhelmingly demonstrates that defendants acted fairly, reasonably, and within their area of expertise in evaluating Hayden. Hayden had many opportunities to explain his conduct to impartial peer review committees that were qualified to judge his performance. The committees made every effort to assess the adequacy of his performance and, upon finding it lacking, imposed consultation and education requirements reasonably related to improving his medical skill and judgment. Under these circumstances, the district court properly entered judgment in defendants' favor in the defamation and conspiracy claims.
 
 
 31
 Accordingly, for the reasons set forth in this opinion, the judgment of the district court is affirmed.
 
 
 
 *
 The HONORABLE STEPHEN N. LIMBAUGH, United States District Judge for the Eastern and Western Districts of Missouri, sitting by designation
 
 
 [1]
 Although Dr. Jenkins' December 1979 letter questioned Hayden's performance of only one cesarean section, she also had questioned his performance in another case
 
 
 [2]
 We recognize that some courts have held that antitrust plaintiffs may establish federal jurisdiction merely upon a showing that the defendants' general activities, taken as a whole, occur in or affect interstate commerce. See Western Waste Service Systems v. Universal Waste Control, 616 F.2d 1094, 1097 (9th Cir.), cert. denied, 449 U.S. 869, 101 S.Ct. 205, 66 L.Ed.2d 88 (1980); Hahn v. Oregon Physicians Service, 689 F.2d 840, 844 (9th Cir.1982), cert. denied, --- U.S. ----, 103 S.Ct. 3115, 77 L.Ed.2d 1369 (1983); McElhinney v. Medical Protective Co., 549 F.Supp. 121, 127 (E.D.Ky.1982). Nevertheless, we believe that the better rule is to require plaintiffs to show that the challenged conduct occurs in or affects interstate commerce. See McLain v. Real Estate Board, supra, 444 U.S. at 246, 100 S.Ct. at 511 (defendants' activities infected by alleged price-fixing conspiracy must affect interstate commerce for federal jurisdiction to arise); Crane v. Intermountain Health Care, Inc., 637 F.2d 715, 723 (10th Cir.1980). For an excellent discussion supporting this position, see P. Areeda, Antitrust Law p 232.1 at 94-95 (Supp.1982)
 Although the defendant hospital's general activities may have occurred in interstate commerce, that is insufficient to establish federal jurisdiction. Instead, Hayden must show that the challenged conduct affects interstate commerce.
 
 
 [3]
 Under Arkansas law, the law governing this diversity claim, defendants are entitled to qualified immunity for statements made in the course of hospital peer review proceedings. A member of a peer review committee is protected from monetary liability so long as he
 acts without malice, has made a reasonable effort to obtain the facts of the matter as to which he acts, and acts in reasonable belief that the action taken by him is warranted by the facts known to him after such reasonable effort to obtain facts.
 Ark.Stat.Ann. Sec. 71-5101 (1979).
 
 
 [4]
 Hayden also contends that defendants made defamatory statements about him outside of the peer review proceedings. He claimed that defendant Ross, a member of the Executive Committee, falsely told a Wyoming hospital recruiter that Hayden was not a good doctor. Hayden also alleged that an unidentified hospital administrator's statement that Hayden might soon lose his privileges was also defamatory
 The district court concluded that neither statement was defamatory. It determined that because the Wyoming hospital administrator recalled only that Dr. Ross had made a negative comment about Hayden, Hayden had failed to prove the statement was defamatory. In concluding that the statement by the hospital administrator was not defamatory, the court found that the administrator had merely acknowledged Hayden's difficulties in response to a question from one of Hayden's patients, and had told the patient to discuss the matter with Hayden. The record amply supports these district court findings also.
 
 
 [5]
 Hayden also contends that the district court erred in finding that defendants followed the Medical Center bylaws in the disciplinary proceedings against him. Defendants' alleged failure to comply with the Medical Center bylaws states no independent cause of action, but is relevant only insofar as it bears on Hayden's due process claim under 42 U.S.C. Sec. 1983 and his defamation and conspiracy claims under state law. As we have noted, the district court properly dismissed the section 1983 claim for lack of jurisdiction, and ample evidence supports its finding that defendants did not defame Hayden or unlawfully interfere with his practice. Thus, we reject Hayden's contention that defendants failed to follow the Medical Center bylaws