Terril W. HUELSMAN, et al., Plaintiffs,

v.

CIVIC CENTER CORPORATION, et al., Defendants.

No. 87–1403C(3).

United States District Court, E.D. Missouri.

June 28, 1988.

Ronald E. Jenkins, St. Louis, Mo., for plaintiffs.

Alan C. Kohn, John A. Klobasa, Kohn, Shands, Elbert, Gianoulakis & Giljum, St. Louis, Mo., for defendant Sportservice Corp.

Frank N. Gunlach, Mary C. Kickham, Armstrong, Teasdale, Kramer, Vaughan & Schlafly, St. Louis, Mo., Terrence C. Sheehy, Peter E. Moll, Edwin H. Wheeler, Howrey & Simon, Washington, D.C., for defendant Civic Center Corp.

## MEMORANDUM

HUNGATE, District Judge.

This matter is before the Court on defendants' separate motions to dismiss plaintiffs' first amended complaint. Plaintiffs oppose the motions. The Court heard oral argument on the motions and gave the parties time in which to submit additional written materials.

Plaintiffs are residents of Missouri and are self-employed, licensed vendors who, "for a substantial period of time" prior to the spring of 1984, sold their merchandise in the area immediately adjacent to and outside Busch Stadium in St. Louis, Missouri, at scheduled events at the stadium. Defendant Civic Center Corporation ("Civic Center") is a corporation engaged in the management and operation of the stadium. Defendant Sportservice Corporation ("Sportservice") has an agreement with Civic Center by which Sportservice has the right to sell goods, merchandise, and food inside the stadium. Pursuant to this Court's federal question jurisdiction, plaintiffs seek "an adjudication that defendants have violated" the Sherman Act, 15 U.S.C. §§ 1 and 2, an award of threefold damages from defendants jointly and severally for such violations, and an award of fees and costs (Counts I and II). Pursuant to this Court's pendent jurisdiction, plaintiffs seek actual and punitive damages for defendants' allegedly tortious interference with plaintiffs' business relationships and expectancies. In particular, plaintiffs allege that from 1983 to about April 1984, defend-

ants engaged in a conspiracy and other conduct to restrain and monopolize the trade, and to fix the prices, of vendors in the area immediately outside of and adjacent to the stadium. Plaintiffs allege this conduct has "an appreciable and substantial effect on interstate commerce" and encompasses efforts relating to passage of and compliance with City of St. Louis Ordinance 59090. In general, that ordinance (a) proscribes vending upon any public streets within a specified geographic area; (b) provides two exceptions to the vending prohibition with one of those exceptions allowing vending in a specified area immediately outside the stadium so long as the interested vendors enter into a street vending agreement with defendant Civic Center; and (c) provides that violation of the ordinance constitutes a misdemeanor punishable by imposition of a fine. Plaintiffs and defendant Civic Center have not entered into a street vending agreement, and plaintiffs' allegations indicate they have not sold merchandise at the stadium since the ordinance was passed.

Defendant Civic Center moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) due to (1) plaintiffs' failure sufficiently to plead either the requisite nexus between defendants' conduct and interstate commerce or the antitrust injury to competition required for Sherman Act claims; (2) movants' immunity from antitrust and tort liability under the *Noerr–Pennington* doctrine for the pre-ordinance conduct at issue here; and (3) movants' exemption from antitrust liability under the state action doctrine and the Local Government Antitrust Act of 1984, 15 U.S.C. §§ 34–36, for the post-ordinance conduct at issue here. Defendant Sportservice moves to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) or for summary judgment under Fed.R.Civ.P. 56 on the same grounds and because of plaintiffs' failure to allege facts establishing their standing to sue.

Finding plaintiffs have not alleged sufficiently the nexus between defendants' conduct and interstate commerce, the Court

will grant the motions on that ground.[1] The Court will not address the other grounds set forth in the motions. Having dismissed the only federal claims, the Court will dismiss without prejudice the remaining pendent claim.

■ The Sherman Act prohibits every contract, combination, or conspiracy "in restraint of trade or commerce among the several states," 15 U.S.C. § 1, and prohibits monopolizing "any part of the trade or commerce among the several states," 15 U.S.C. § 2. To fall within the Sherman Act, the alleged activity must occur in interstate commerce or substantially affect interstate commerce. *McLain v. Real Estate Bd. of New Orleans*, 444 U.S. 232, 241–42, 100 S.Ct. 502, 508–09, 62 L.Ed.2d 441 (1980); *Burke v. Ford*, 389 U.S. 320, 321, 88 S.Ct. 443, 444, 19 L.Ed.2d 554 (1967) (per curiam). No party contends the conduct at issue here is itself "in" interstate commerce. Thus, the Court must determine whether the allegations of plaintiffs' first amended complaint show sufficiently that defendants' conduct, while local in nature, "substantially affects" interstate commerce for purposes of a Sherman Act claim. *Hospital Bldg. Co., supra*, 425 U.S. at 743, 96 S.Ct. at 1852.

To satisfy this requirement, plaintiffs may make allegations about conduct "not 'purposely directed' toward interstate commerce," *id.* at 744–45, 96 S.Ct. at 1852–53; about conduct having an "impact on interstate commerce [that] falls short of causing enterprises to fold or affecting market price," *id.* at 745–46, 96 S.Ct. at 1852–53; and about the "substantial effect on interstate commerce generated" by defendants' business activity, *McLain, supra*, 444 U.S. at 242–43, 100 S.Ct. at 509–10. While, for jurisdictional purposes, plaintiffs need not quantify the adverse impact of defendants' conduct, *id.* at 243, 100 S.Ct. at 510, plaintiffs must demonstrate that the activity of defendants allegedly infected by the conspiracy " 'as a matter of practical econom-

ics' [has] a not insubstantial effect on the interstate commerce involved." *Id.* at 246, 100 S.Ct. at 511.

> To establish jurisdiction [over a Sherman Act claim] a plaintiff must allege the critical relationship in the pleadings and if these allegations are controverted must proceed to demonstrate by submission of evidence beyond the pleadings either that the defendants' activity is itself in interstate commerce or, if it is local in nature, that it has an effect on some other appreciable activity demonstrably in interstate commerce.

*Id.* at 242, 100 S.Ct. at 509. The United States Court of Appeals for the Eighth Circuit has interpreted this to require a determination of jurisdiction by "using a case-by-case analysis of the relevant economic facts." *Heille v. City of St. Paul, Mn.*, 671 F.2d 1134, 1136 (8th Cir.1982). Moreover, the Eighth Circuit requires this analysis to focus on defendants' challenged conduct rather than on defendants' general activities. *Hayden v. Bracy*, 744 F.2d 1338, 1343 n. 2 (8th Cir.1984).

In this case, the following relevant allegations are pertinent to this inquiry:

(a) plaintiffs are vendors who offered their "merchandise to members of the public from various states of these United States attending various attractions at Busch Stadium," ¶ 5 of first amended complaint;

(b) the merchandise was and is "purchased for sale in interstate commerce; and subsequently, sold by the vendors to citizens of Illinois and many other states during sporting events and scheduled attractions at Busch Stadium thereby having an appreciable and substantial effect on interstate commerce," ¶ 6 of first amended complaint;

(c) defendants and unidentified others met and agreed to restrain trade and eliminate competition in "the geographic market

---

**1.** As observed by the United States Supreme Court, whether the dismissal is considered under Fed.R.Civ.P. 12(b)(1) or 12(b)(6), "the critical inquiry is into the adequacy of the nexus between [defendants'] conduct and interstate commerce that is alleged in the complaint." *Hospital Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 742 n. 1, 96 S.Ct. 1848, 1851 n. 1, 48 L.Ed.2d 338 (1976).

consisting of the outside area immediately adjacent to Busch Stadium. This area was attended by citizens of different states on a regular basis for the purpose of attending sporting events and scheduled attractions at Busch Stadium and as such, the elimination of competition in this area affected interstate commerce," ¶ 7 and ¶ 8 of first amended complaint;

(d) defendants' conduct consisted of an understanding "to maintain the market position of Defendant, Sportservice, and to restrain trade, to destroy competition, and to exclude competitors from the field of competition in the sale of goods, wares and merchandise in and around the area outside and immediately adjacent to Busch Stadium," ¶ 10 of first amended complaint;

(e) the means used by defendants to eliminate sales in that geographic area included

contracting with others, the effect of which was to control the selection, sale, and price of goods, wares and merchandise. Said contract is a sham and is but another device used by the Defendants to conceal an attempt to legitimize their illegal actions. The contract allows the defendant Sportservice Corporation to totally control the sale of goods, wares and merchandise, thereby eliminating the free and open competition that previously existed. [T]he agreement and the actions of the Defendants have and will have the effect of allowing the sale of the goods, wares and merchandise inside and outside Busch Stadium at uniform, higher, or stabilized prices all to the detriment of the public and to these plaintiffs. The Defendants have in fact acted pursuant to the contract by designating to certain individuals the exclusive right to sell in the outside area immediately adjacent to Busch Stadium at fixed or stabilized or uniform prices. That Defendant, Civic Center, also in a quid pro quo exchange, agreed to expend the approximate amount of One Million Dollars ($1,000,000) to landscape their own property in the outside area immediately adjacent to Busch Stadium in exchange of the City of St. Louis passing an ordinance.... [T]he defendants used this

ordinance to eliminate and ban all vendors except those controlled by Civic Center Corporation from vending in the outside area immediately adjacent to Busch Stadium and not on their property." ¶ 11 of first amended complaint;

(f) "due to the license agreement formulated by the Civic Center Corporation, ... the public, including citizens of many different states, is detrimentally affected by the defendants' actions and the purchase of the wares, goods and merchandise pursuant to these new license agreements. Competition has been elimiated [sic] and the consuming public has suffered in having to purchase goods, wares and merchandise of lesser quality at monopolistic prices," ¶ 13 of first amended complaint; and

(g) the intended effects of defendants' conduct are to maintain defendant Sportservice's market position; to "prevent and eliminate competition" in the relevant geographic area; to increase defendant Civic Center's revenues from defendant Sportservice's payments; to cause the public to pay higher prices for merchandise inside and outside the stadium; to exclude competitors, including plaintiffs, from the geographic area; to maintain higher prices for the merchandise inside and outside the stadium; and to "inhibit and prevent the growth of plaintiffs' businesses and destroy [plaintiffs'] businesses," ¶¶ 14, 15, and 16 of first amended complaint.

In Count II, plaintiffs further allege that defendants acted with specific intent in furtherance of the alleged monopolization "by controlling who was permitted to be a vendor outside the stadium, what was to be sold, who it was to be purchased from, and what price was to be charged to the public." ¶¶ 17 and 20 of first amended complaint. As a result of obtaining exclusive control over the vendors in that geographic area, plaintiffs allege defendants have "monopoly power over these items at" the stadium and "defendants now unlawfully have the power to control the prices charged and the number and types and variety of items sold" at and immediately adjacent to the stadium. ¶ 19 of first

amended complaint. A review of these allegations does not establish defendants' conduct has any "substantial affect" on interstate commerce, even when considering defendants' acknowledgement during oral argument that a variety of items sold by plaintiffs were made outside Missouri and that several of plaintiffs' customers were from outside Missouri.

In *Hayden,* the Eighth Circuit affirmed summary judgment entered in favor of defendants (a regional medical center, its administrator, and twenty-one doctors on its staff) for plaintiff's failure to satisfy the requirement that defendants' conduct affect interstate commerce. *Hayden, supra,* 744 F.2d at 1342–43. Plaintiff, a doctor who left his practice at the defendant medical center allegedly as a result of improper conduct by defendant individuals, sought relief in part under the Sherman Act. In his amended complaint, plaintiff alleged defendants' conduct substantially raised prices for out-of-state patients and substantially increased the costs of out-of-state third parties who pay for medical services. *Id.* By an affidavit, plaintiff stated he "annually purchased $6,000 worth of office supplies from out-of-state vendors, and that he annually received over $100,000 (75% of his billings) from out-of-state insurance companies." *Id.* at 1343. The court found defendants' allegedly improper conduct (requiring plaintiff to attend a specified amount of post-graduate education) did not "[a]s a matter of practical economics ... substantially affect interstate commerce." *Id.* at 1343.

In *Heille,* the Eighth Circuit upheld the dismissal of the Sherman Act claims of a plaintiff who was a licensed rubbish collector suing a Minnesota municipality entering the rubbish collection business. *Heille, supra,* 671 F.2d at 1136–37. The district court had noted neither party bought or sold a product or service in interstate commerce; the businesses were relatively small; and "the operation of the businesses did not substantially affect an appreciable activity in interstate commerce." *Id.* at 1137. The Eighth Circuit affirmed the dismissal despite plaintiff's contentions

the trucks and equipment used to haul rubbish were purchased out of state; much of the rubbish collected originated out of state; some of plaintiff's or defendant's customers may have lived or worked nearby in Wisconsin; some waste from the metropolitan area was shipped to Wisconsin.

*Id.*

Furthermore, in cases reversing dismissals of Sherman Act claims, the appellate courts have found that the record indicates substantial economic consequences relating to defendants' conduct. *See McLain, supra,* 444 U.S. at 237, 238, 239, 100 S.Ct. at 506, 507, 508 (in an action challenging real estate broker's commission rates, class plaintiffs' affidavit in response to defendants' motion to dismiss showed that during the relevant period, more than $40 million was received annually in federally insured loans and over $100 million in loan money was received from or guaranteed by out-of-state sources); *Hospital Bldg. Co., supra* (plaintiff hospital alleged in its amended complaint that (a) it bought 80% of its medicines and supplies from out-of-state suppliers, with $112,000 spent on such items in one year; (b) a large proportion of its revenue came from out-of-state insurance companies or federal programs; and (c) it had planned a $4 million expansion through out-of-state lenders).

In contrast, here neither the allegations in the amended complaint nor any materials filed by plaintiffs in response to defendants' motions demonstrate to the Court or allow the Court properly to determine that any effect on interstate commerce resulting from defendants' conduct is "substantial." There are no allegations showing the magnitude of either plaintiffs' purchases of out-of-state goods or plaintiffs' sales to out-of-state customers, nor of any other interstate consequence of defendants' conduct. Nor is this a situation where plaintiffs do not have access to the information necessary to establish such facts. Indeed, plaintiffs have not raised with this Court any need for discovery from defendants either to respond properly to the motions or to make proper jurisdic-

**830**

tional allegations. Instead, the Court is confronted with general antitrust claims of two local individuals who want to sell event-related merchandise outside a local stadium during scheduled events at the stadium. Without more, the Court perceives plaintiffs' affected businesses as seasonal, sporadic sales and purchases of unspecified amounts of event-related merchandise, with an unidentified amount of such merchandise being manufactured out-of-state and perhaps sold to out-of-state customers. The Court cannot find in this scenario the economic practicalities necessary to determine that defendants' conduct "substantially affects" an appreciable activity in interstate commerce. Accordingly, defendants' motions to dismiss Counts I and II for failure to allege a sufficient nexus between defendants' conduct and interstate commerce will be granted.

Having dismissed the only federal claims before the Court, and having considered the circumstances, the remaining pendent state claim will be dismissed without prejudice. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed. 2d 218 (1966). The Court notes there is pending a state court action in which other licensed street vendors are pursuing state antitrust and tortious interference claims against the same defendants for the conduct at issue here. *See Defino v. Civic Center Corporation*, 718 S.W.2d 505 (Mo. App.1986) (reversing dismissal of plaintiffs' complaint). Pursuit of plaintiffs' state claim in state court will not be inconvenient to the parties, particularly since the record in this case does not reflect a significant amount of litigation effort has been directed toward that claim at this stage of these proceedings. *See Koke v. Stifel Nicolaus & Co.*, 620 F.2d 1340, 1347 (8th Cir.1980); *Kuhn v. National Ass'n of Letter Carriers, Branch 5*, 528 F.2d 767, 771 n. 6 (8th Cir.1976).

Based on the foregoing, plaintiffs' claims will be dismissed without prejudice.

### ORDER

A memorandum dated this day is hereby incorporated into and made a part of this order.

IT IS HEREBY ORDERED that defendants' motions to dismiss Counts I and II of plaintiffs' first amended complaint for failure to allege a sufficient nexus between defendants' conduct and interstate commerce are granted, and Counts I and II are hereby dismissed without prejudice.

IT IS HEREBY FURTHER ORDERED that the pendent state claim set forth in Count III of plaintiffs' first amended complaint is dismissed without prejudice.

Plaintiffs shall bear the costs.